[No. B093044. Second Dist., Div. Seven. Oct. 23, 1995.]

CITIZENS FOR RESPONSIBLE DEVELOPMENT IN WEST
HOLLYWOOD, Plaintiff and Appellant, v.
CITY OF WEST HOLLYWOOD et al., Defendants and Respondents;
WEST HOLLYWOOD COMMUNITY HOUSING CORPORATION, Real
Party in Interest and Respondent.

**COUNSEL**

Andrews & Kurth, James B. Hicks, Kathy A. Jorrie and Christie Gaumer for Plaintiff and Appellant.

Richards, Watson & Gershon and Terry P. Kaufmann Macias for Defendants and Respondents.

Latham & Watkins, Amy G. Nefouse, Kimberly Arouh, Lucinda Starrett and Kirk Wilkinson for Real Party in Interest and Respondent.

**OPINION**

**WOODS (Fred), J.—**

I

INTRODUCTION

Petitioner and appellant, Citizens for Responsible Development in West Hollywood (Citizens), is composed of neighbors who oppose the April 4, 1994, approval of a 40-unit low-income housing project by the City of West Hollywood (City) and the City Council of the City of West Hollywood (City Council) to be located in their neighborhood at 976-988½ Palm Avenue. The project is intended as low-income housing for persons with AIDS and is part of an ongoing effort to provide low-income housing to the needy.

The project is proposed by respondent West Hollywood Community Housing Corporation (Housing Corporation), a nonprofit community based organization.

The project provides for the rehabilitation and restoration of the two front craftsman-style buildings located on the property (Historic Structures) and the demolition of the remaining four buildings in the rear (Rear Structures).

The underlying petition raises a single challenge to the project—whether, pursuant to Public Resources Code section 21084.1, the City was required to proceed with an EIR (environmental impact report) rather than a mitigated negative declaration to address the project's impacts on the Historic Structures and the Rear Structures. The trial court determined that an EIR was not required. In addition, Citizens raises an issue on appeal pertaining to an award for costs to Housing Corporation which Citizens claims is an illegal award for "messenger" services. For the reasons hereafter set forth, we affirm.

## II

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

A. *The 1993 Historic Designation Proceedings.*

On March 23, 1990, the Cultural Heritage Advisory Board (CHAB) reviewed a staff-initiated cultural resource nomination application to create a craftsman district.[1] In addition to certain properties located on Hancock Avenue, each of the six structures located on the property was under consideration for inclusion in the district. The tenants on the property submitted a letter indicating their support for inclusion of their complex in the district. A representative of one of the owners of the property testified in opposition.

After making an independent assessment of the characteristics of each of the proposed structures, CHAB determined that the homes selected for the craftsman district should represent the finer examples of the craftsman style and, therefore, should consist of only those homes which were intact, in good condition and which are unified aesthetically and by physical development. After a lengthy discussion, CHAB recommended that the craftsman district include all of the requested properties but the Rear Structures and one Hancock Avenue property. CHAB excluded the Rear Structures because "though designed in the Craftsman style, the structures do not demonstrate the same depth of detail as other structures in the nominated district and also exhibit some alteration." The CHAB recommendation was appealed to the City Council by three Hancock Avenue property owners.

On February 16, 1993, the City Council held a duly noticed public hearing on the appeals and the final consideration of the creation of the craftsman

---

[1]CHAB consists of five individuals who have a demonstrated interest in and knowledge of local history and architecture and who possess expertise in a field related to preservation. One member is a registered architect, one member an architectural historian, one a property owner or developer, and one an urban planner or designer.

district. At the hearing, no one protested against the exclusion of the Rear Structures from the craftsman district. On March 1, 1993, the City Council affirmed the recommendation of CHAB, in part, designating the craftsman district as a historic district, to include only the properties located at 1009-1011, 1013, 1017 N. Hancock Avenue and 976, 986-988 Palm Avenue. The City Council's decision was never challenged.

B. *The Palm View Project Proceedings.*

The project was reviewed by CHAB, the planning commission and the City Council at four public hearings. The Housing Corporation also held three neighborhood meetings, two more than required by the City's code, to address neighborhood concerns regarding the project. These concerns were summarized and responded to in the staff report submitted to the planning commission and City Council prior to the public hearings.

The project required a certificate of appropriateness from CHAB because of the proposed rehabilitation and restoration plan for the Historic Structures. CHAB reviewed the rehabilitation plan on November 22, 1993. The board members gave serious consideration to the plan itself and how the overall project design incorporated the two structures. Several modifications to the original project design were required. CHAB required that the buildings be placed perpendicular to the street in order to emulate their original positions, instead of at an angle as originally designed; that the retaining wall in front be constructed with a similar "river rock" surface to match the existing entryway pillars in front; and that all windows and doors be replaced with ones that are identical to the original ones in style and materials. CHAB approved a certificate of appropriateness based on the following findings:

"a. The proposed work will neither adversely affect the significant architectural features of the cultural resource nor adversely affect the character of historic, architectural or aesthetic interest or value of the cultural resource and its site.

"b. The proposed work conforms to the Secretary of the Interior's standards for Rehabilitation, and does not adversely affect the character of the designated cultural resource."

At the January 20, 1994, planning commission hearing, the commission received numerous letters and testimony in opposition to, as well as in support of, the project. Although some concerns were raised regarding the treatment of the buildings on the property, the opposition to the project

focused predominately on concerns related to over development, congestion, traffic, loss of light and views, and property devaluation. At the conclusion of the hearing, the planning commission determined, in part, that the proposed project will not impair the integrity and character of the district in which it is located, that the project design is superior, incorporating exemplar detailing, landscaping, open space and careful attention to pedestrian orientation, is of superior architectural design and compatible with the existing condominium and apartment uses located along Palm Avenue.

The decision of the planning commission was appealed by three individuals to the City Council. The appeals overwhelmingly addressed concerns relating to traffic, parking, density, view obstruction, air quality, property values, and the method of project procurement.

The appeals were addressed by the City Council at two duly noticed public hearings on March 21, and April 4, 1994. Each of the issues raised on appeal was individually addressed in the March 21, 1994, staff report. Numerous form letters in opposition to the project were submitted to the City Council. Again, the concerns addressed in the letters, as well as the oral testimony in opposition to the project were submitted to the City Council. Again, the concerns addressed in the letters, as well as the oral testimony in opposition to the project, primarily related to traffic, parking, density, property values and view obstruction. Several individuals who spoke in favor of the project emphasized the tremendous need for low-income housing for persons affected by HIV and AIDS. The City Council carefully balanced the need for the project with the concerns of those residents in opposition. ("[T]here are a lot of very legitimate opposition to [the] project. But, our Staff is very thorough and is best doing research and bringing us back statistics. And I don't think we've ever voted on a project that the need was absolutely that overwhelming. And I think, you know, that's the kind of criteria we use when we go forward on a project, on a social service project.")

At the conclusion of the April 4, 1994, public hearing, the City Council adopted the CHAB findings of fact and conditions of approval for the certificate of appropriateness and further found that the Rear Structures "do not exemplify, symbolize or represent elements of the cultural, social, economic, political, or architectural history of the City"; "have not been designated as an historic resource and are no longer being formally considered for such designation"; "do not embody distinguishing architectural characteristics valuable to a study of a period, style, method or construction" and "are not representative of the work or product of a notable builder,

designer, or architect." The project and mitigated negative declaration were unanimously approved.

Thereafter, this action was brought challenging *only* the project's purported impacts on the Historic Structures and Rear Structures.

### C. *Mandamus and Injunction Proceedings.*

On May 3, 1994, Citizens filed a verified petition for writ of mandate and injunctive relief alleging that the City's approval of the Palm View project with a mitigated negative declaration instead of an EIR was in violation of California Environmenal Quality Act (CEQA), Public Resources Code section 21084.1.

The original hearing on the petition for writ of mandate was held on December 21, 1994. On December 28, 1994, the court denied the writ. Judgment was entered on January 24, 1995.

On January 9, 1995, Citizens filed a motion for oral argument and reconsideration. The motion for reconsideration was denied on February 1, 1995.

On February 7, 1995, Citizens filed a motion for new trial. On March 1, 1995, the court granted the motion for new trial and vacated its earlier decision. Notably, the court held that the motion for new trial raised no *substantive* grounds for new trial. The motion was granted, however, because Citizens asserted that it was prevented from having a fair trial on December 21, 1994, because the matter was "deemed" submitted "without any opportunity for oral argument." The trial court specifically stated the grounds for its decision: "It is apparent to the court that petitioner had more than sufficiently presented the grounds for the petition and its arguments in its written papers prior to the 12-21-94 hearing. However, the specter of denial of a fair trial is an imprecation to the court." The retrial on the merits of the petition was held on April 6, 1995. On April 10, 1995, the court denied the petition for the second time. The statement of decision and judgment were signed on May 17, 1995. The court found, in pertinent part:

There is no "fair argument" that project will cause a substantial adverse change in the significance of any historic resource or will have a significant effect on the environment;

The overwhelming evidence in the administrative record shows that a mitigated negative declaration has eliminated *any* possible significant effect on any historic resource or on the environment;

The planned rehabilitation of the historic resources, by all accounts, will have a beneficial effect on these resources and enhance their use as historic models;

The uncontradicted evidence in the administrative record demonstrates that the interiors of the two Historic Structures on the property are not significant;

The four Rear Structures located on the property are not historic resources as defined in Public Resources Code section 5020.1, subdivision (k), 5024.1, subdivision (g), or 21084.1. Therefore, the City did not abuse its discretion in approving the demolition of these structures; and

The preponderance of the evidence in the administrative record demonstrates that the four Rear Structures are not historically or culturally significant.

After the second hearing on the merits, petitioner moved to stay demolition of the buildings. During an ex parte hearing at the request of City's counsel to continue the hearing on the motion to stay for six days, the trial court granted a temporary stay. On May 18, 1995, the trial court denied Citizens' motion for stay and dissolved the temporary stay.

On May 22, 1995, Citizens filed its notice of appeal.

III

DISCUSSION

A. *The Applicable Standard of Review Is the Fair Argument Test.*

■ An EIR is not required on any project proposed to be carried out or approved unless substantial evidence in light of the whole record supports a fair argument that the proposed project may have a significant effect on the environment. (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1993) 6 Cal.4th 1112, 1123 [26 Cal.Rptr.2d 231, 864 P.2d 502].) In the absence of such a finding, the adoption of a mitigated negative declaration must be upheld. (See e.g., *Lucas Valley Homeowners Assn.* v. *County of Marin* (1991) 233 Cal.App.3d 130, 141-142 [284 Cal.Rptr. 427]; *Leonoff* v. *Monterey County Bd. of Supervisors* (1990) 222 Cal.App.3d 1337, 1348 [272 Cal.Rptr. 372].) The burden is on the petitioner to demonstrate by

citation to the record the existence of such substantial evidence. (*Id.* at p. 1348.)[2]

The record demonstrates that the "mitigated negative declaration has eliminated any possible significant effect on any historic resource."

**B.** *Substantial Evidence in the Record Demonstrates That the Adoption of the Mitigated Negative Declaration Has Eliminated Any Possible Significant Effect on Any Historic Resource.*

Public Resources Code section 21084.1 provides, in pertinent part: "A project that may cause a substantial adverse change in the significance of historical resource is a project that may have a significant effect on the environment."

As set forth below, the project will restore and rehabilitate the Historic Structures. The Rear Structures, on the other hand, simply do not fall within the statutory definition of "historic resource" and, after careful consideration by a board of experts, were determined, in any event, not to be historically or culturally significant.

**1.** *Substantial Evidence in the Record Demonstrates That the Project May Not Adversely Change the Historic Structures Because It Provides for Their Restoration and Rehabilitation.*

The initial study addressed the project's impacts on the Historic Structures and concluded they were neither significant nor adverse. Specifically, the initial study states that "[t]he project will rehabilitate [the Historic Structures] and incorporate them into the overall project. This constitutes a significant gain for the historic environment and for the City because these structures may have otherwise continued to deteriorate beyond repair." The initial study further emphasizes that "[t]he CHAB concluded that the impacts to these two cultural resources was in fact favorable in that they would be completely rehabilitated. These two buildings are currently in disrepair." Testimony from the project architect demonstrates that the existing foundations and framing specifically are very badly in need of repair. In addition,

---

[2]Substantial evidence includes facts, reasonable assumptions based on fact, and expert opinion supported by facts. (Pub. Resources Code, § 21080, subd. (e).) Substantial evidence does not include speculation, unsubstantiated opinion, or evidence that is clearly erroneous. (*Ibid.*) Thus, Citizens' speculation regarding project approval based upon hearsay and an impermissible attempt to inquire into the motives of the City Council will be disregarded. (See *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768 [122 Cal.Rptr. 543, 537 P.2d 375].)

the Historic Structures do not merely need a "new coat of paint" to be restored and rehabilitated.

Citizens overlooks the evidence in the record which overwhelmingly supports the conclusions set forth in the initial study and the City's findings that, although the Historic Structures will be relocated, they will not be changed adversely. On the contrary, the structures will be preserved from further deterioration.

The restoration of the Historic Structures will include the reuse of the original doors and windows, the restoration of the wood siding and the replacement of any siding that has deteriorated to match the existing, replacement of the roof with new composition roofing and the complete renovation of the interiors, including new walls, plumbing, electrical wiring and heating systems. The buildings will be placed perpendicular to the street to emulate their original positions, instead of at an angle as originally designed. The new construction will, for the most part, complement the Historic Structures in that it will be behind the buildings and will not be visible from the street. The architecture of the new construction will blend with the old, while at the same time being visually set apart from the old. Thus, the evidence in the record demonstrates that the project will cause a positive and beneficial, rather than adverse, change in the significance of the Historic Structures by restoring them and preserving them from further deterioration.

Citizens cannot rely on the purported existence of public controversy or a disagreement between experts over the significance of an effect as substantial evidence, as indicated in the appellant's opening brief. CEQA is clear that neither the existence of public controversy nor a disagreement between experts constitutes substantial evidence of significant impact on the environment unless a case is marginal, which is certainly not the case here. (*Lucas Valley Homeowners Assn.* v. *County of Marin*, *supra*, 233 Cal.App.3d at p. 163.) In any event, the record demonstrates neither a disagreement between experts nor significant public controversy regarding the proposed treatment of the buildings located on the property. Instead, the public controversy surrounding this project, including the appeals to the City Council, focused overwhelmingly on issues related to overdevelopment, congestion, traffic, loss of light and view, property devaluation and the method of project procurement. Citizens has not challenged the project on any of these issues and, therefore, cannot rely on such controversy to demonstrate substantial evidence of a significant effect on the environment.

## 2. *The Uncontroverted Evidence in the Administrative Record Demonstrates That the Interiors of the Historic Buildings Are Not Significant.*

Citizens erroneously contends that the proposed treatment of the interiors of the two historic buildings violates Public Resources Code section 21084.1. Citizens has failed to cite to any evidence in the record which demonstrates that these interiors are in any way significant.

The uncontradicted evidence in the record demonstrates that the interiors of these buildings are not significant. The staff report prepared by the department of community development for the August 27, 1990, CHAB's historic designation review of the Palm Avenue properties states: "There are no known significant interior features." Consistent with the staff report, CHAB only designated the exteriors of the structure, including the entry and window openings and articulation, as part of the craftsman district.

In addition to the CHAB's designation, the City's associate planner also testified that the interiors were not significant.

Significantly, no evidence to the contrary was presented at any of the project review hearings, although there was ample opportunity to present such evidence. In fact, no opponents of the project ever testified to the contrary with respect to the significance, or treatment, of the interiors. Nor was the issue raised in any of the many opposition letters presented at the hearings, nor at any of the three neighborhood meetings, nor in any of the three appeal statements.

The only "evidence" proffered by Citizens to support its claim consists of two letters from the state historic preservation officer and the City's treatment of the interior of an entirely different, unrelated structure located at 959 Hancock Street. Housing Corporation does not dispute that there may be instances where the interior of a historic structure is architecturally or historically significant. However, as set forth above, that simply is not the case here. Moreover, the two state letters provide no support for Citizens' claim because they relate to two completely different structures in two completely different cities and, thus, have no relevance to this case.[3]

---

[3]Citizens' reliance on *Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816 [201 Cal.Rptr. 165, 678 P.2d 378], to support its reliance on two irrelevant letters is also misplaced. *Ontario,* which is a tax case, is inapposite because there is no dispute regarding the interpretation of Public Resources Code section 21084.1 or of any administrative regulation of the State Office of Historic Preservation. The dispute over the

3. *The Rear Structures Are Not Historic Resources as Defined in Public Resources Code Section 5020.1, Subdivision (k), 5024.1, Subdivision (g), or 21084.1.*

Public Resources Code section 21084.1 further provides, in pertinent part: "For purposes of this section, an historical resource is a resource listed in, or determined to be eligible for listing in, the California Register of Historical Resources. Historical resources included in a local register of historical resources, as defined in subdivision (k) of Section 5020.1, or deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1, are presumed to be historically or culturally significant for purposes of this section, unless the preponderance of the evidence demonstrates that the resource is not historically or culturally significant."

Thus, section 21084.1 is inapplicable where, as here, a structure is not listed in, or eligible for listing in, the California Register of Historical Resources or fails to meet the definition of a historic resource as defined in either Public Resources Code section 5020.1, subdivision (k) or 5024.1, subdivision (g).[4]

Pursuant to Public Resources Code section 5020.1, subdivision (k), a historic resource must be listed on a "local register of historical resources." That is, a "list of properties officially designated or recognized as historically significant by a local government pursuant to a local ordinance or resolution." Only the Historic Structures are officially designated as historic resources. The Rear Structures are not. Thus, the Rear Structures are not historic resources within the meaning of section 5020.1, subdivision (k).

The Rear Structures also fail to qualify as historic resources pursuant to Public Resources Code section 5024.1, subdivision (g). Under that section, a resource is considered historic only if it is included in a historic resources survey which meets each of the four criteria enumerated therein. Although the Rear Structures are identified in the City's 1987 historic resources survey, the 1987 survey does not meet the fourth criteria under the statute— that is, the survey must have been updated if it is more than five years old. (See Pub. Resources Code, § 5024.1, subd. (g)(4).) The 1987 survey was accepted and approved by the City Council on October 19, 1987. Thus, it

interiors here, unlike in *Ontario*, is purely an evidentiary one. Moreover, the State Historic Preservation officer did not render any opinion with respect to the interiors of any of the structures located on the property. Thus, there was no opinion rendered in either letter with respect to this project which need be given any weight in any event.

[4]Neither the Historic Structures nor the Rear Structures were ever listed in or eligible for listing in the California Register of Historical Resources.

was more than five years old when the City created the craftsman district in 1993 and when the City approved the project earlier this year. The 1987 survey has never been updated.

Citizens has cited no evidence to the contrary. The letter from the State Office of Historic Preservation purports to address only the first three criteria identified in Public Resources Code section 5024.1, subdivision (g). However, the state letter does not address the fourth criteria, that is, the age and status of 1987 survey. Citizens mistakenly relies on the CHAB minutes for the August 27, 1990, public meeting to purportedly demonstrate that the survey was updated. The minutes merely reflect that the action taken by CHAB was the recommendation of the creation of the craftsman district according to the revised boundaries and revised list of buildings to be included in the district.

4. *Even If the Rear Structures Met the Criteria in Either Public Resources Code Section 5020.1, Subdivision (k) or 5024.1, Subdivision (g), the Preponderance of the Evidence Demonstrates That the Structures Are Not Historically or Culturally Significant.*

As set forth above, the presumption contained in Public Resources Code section 21084.1 does not apply in this case. Even if it did, it has been rebutted in this instance by a preponderance of the evidence. The record reflects that the Rear Structures were not as old as the City's records indicated; that the structures were not in any way connected to any historic persons; and were "nothing but garages with some units over them," with no "particular characteristics to them," and that one "was not originally a house" but a "garage that has been converted." After reviewing all of the evidence and testimony at the public meeting, one of the CHAB members stated that the Rear Structures were only marginally related to the distinguishing features of the craftsman style and, in fact, were "pretty mediocre examples of Craftsman style." CHAB specifically found that "[t]hough designed in the Craftsman style, the structures do not demonstrate the same depth of detail as other structures in the nominated district and also exhibit some alteration." In addition, a City planner testified at the 1993 City Council hearing that the Rear Structures were not recommended for inclusion in the district because CHAB determined that they had been significantly modified, which thereby obscured the details of the craftsman architectural style, and were so small and in such condition that they did not warrant inclusion in the district. At the conclusion of the April 4, 1994, hearing on the project, the City Council specifically found that the Rear Structures "do not exemplify, symbolize or represent elements of the cultural, social, economic, political, or architectural history of the City"; "do

not embody distinguishing architectural characteristics valuable to a study of a period, style, method, or construction"; and "are not representative of the work or product of a notable builder, designer, or architect."

Citizens attaches unwarranted significance to the fact that the Rear Structures were originally identified in the 1987 survey and included in the historical resources inventory. The information in the 1987 survey was utilized to compile the City's historic resources inventory (the Inventory). The Inventory was an overinclusive list of potentially historic properties and was never, in any way, intended to constitute a final determination as to the actual historic or cultural value of each of the structures listed therein. The final determination was to be made only after an individualized assessment of each structure. Pursuant to the City's Cultural Heritage Preservation Ordinance (the Preservation Ordinance), CHAB is charged with (1) individually evaluating the cultural, social, geographic, historic, and architectural significance of any structure listed on the Inventory upon receiving a nomination application to determine if the structure is worthy of official designation as a local cultural resource and (2) making a specific recommendation to the City Council. If a structure was deemed historically or culturally significant merely because it was listed in the Inventory, these provisions of the Preservation Ordinance would have no meaning and would be mere surplusage. Such a construction is absolutely inconsistent with the well-established principles of statutory construction and should be avoided. (*J.R. Norton Co.* v. *Agricultural Labor Relations Bd.*(1979) 26 Cal.3d 1, 36-37 [160 Cal.Rptr. 710, 603 P.2d 1306].)

5. *The Preservation Ordinance and the City's Approval of the Project Is Consistent With State Law.*

■ Citizens also argue that the City's Preservation Ordinance is preempted by state law. Citizens' argument is disregarded by this court because petitioner failed to raise any challenge to the Preservation Ordinance based on preemption, or on any other grounds, in its petition. Even if it had raised such an argument, the ordinance, and the City's application of the ordinance to the project, is in fact completely consistent with state law. (See Pub. Resources Code, § 5020.7 ["public agencies . . . shall endeavor to carry out their responsibilities . . . in a manner designed to elicit the cooperation of the owners of both identified and unidentified resources and to encourage the support of the general public for the preservation and enhancement of historical resources."].) Moreover, on their face, the state historic preservation statutes do not prohibit local control, but instead vest local entities with broad discretion to encourage preservation where appropriate.

In addition, the conditions of approval imposed on the project pursuant to the ordinance, including, but not limited to, (1) that the Secretary of the Interior's standards for rehabilitation and guidelines for rehabilitating historic structures be followed in removal and replacement of exterior elements of the buildings, (2) that the material and colors for the repair of the structure shall match those of the existing structure or shall be historically accurate, and (3) that the existing historic structure on the southernmost portion of the property be placed on the site as close to its original placement as possible, will result in the restoration and rehabilitation of the Historic Structures and, therefore, they too, are consistent with state law.

C. *The City's 1993 Historic Designation Decision Is Absolutely Immune From Collateral Attack Because That Decision Was Never Overturned Pursuant to Administrative Mandamus.*

As set forth above, the City rendered a decision in 1993 designating the Historic Structures as part of the craftsman district, and determining that the Rear Structures were not worthy of such historic designation. The decision was never challenged and is, therefore, final.

California courts have consistently held that an administrative decision which has not been overturned through administrative mandamus is absolutely immune from collateral attack. (*Rossco Holdings, Inc. v. State of California* (1989) 212 Cal.App.3d 642, 660 [260 Cal.Rptr. 736] [landowner's failure to challenge coastal commission decision in mandate renders the action "immune from collateral attack"]; see also, *Patrick Media Group, Inc. v. California Coastal Com.* (1992) 9 Cal.App.4th 592 [11 Cal.Rptr.2d 824] [advertising company challenging a coastal permit condition requiring removal of on-site advertising structures prior to development required to proceed in mandate prior to seeking damages]; *Schwartzendruber v. City of San Diego* (1992) 3 Cal.App.4th 896 [5 Cal.Rptr.2d 64] [causes of action for damages barred because plaintiff never overturned the commission's finding that termination was justified]; *Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495 [157 Cal.Rptr. 190] [untimely action filed by third party against indispensable party was barred by 60-day statute of limitations under the Coastal Act]; *Briggs v. State of California* ex rel. *Dept. Parks & Recreation* (1979) 98 Cal.App.3d 190 [159 Cal.Rptr. 390] [failure to file mandate petition within 60 days after decision denying a permit rendered the Commission's decision immune from objection in a collateral proceeding].)

Because the 1993 historic designation decision was never challenged and overturned, that decision is final. The City Council was, therefore, entitled to

rely on it when it evaluated the potential environmental impacts of the project. Citizens may not seek a judicial examination of the same issues resolved by that decision in order now to support a contention that an EIR is required for the project.

### D. *The Trial Court's Award of Costs to Housing Corporation Was Appropriate.*

■ As part of the trial court's judgment denying the petition for writ of mandate and injunctive relief, the court awarded to Housing Corporation costs in the sum of $701.95. On appeal, Citizens contends that Housing Corporation was awarded "service of process" costs which were in truth and in fact "unrecoverable messenger fees." We find the contention to be lacking in merit. Housing Corporation duly filed a memorandum of costs in the form provided by statute. Citizens then moved to strike and tax costs. The trial court partially granted Citizens' motion, disallowing the item claimed for exhibit copies. The final judgment awarded $701.95 in costs to Housing Corporation against Citizens as previously indicated.

The trial court's award of costs to Housing Corporation was proper. California Code of Civil Procedure section 1033.5 sets forth the items of costs which may or may not be recovered. In addition, "[a]n item not specifically allowable under subdivision (a) nor prohibited under subdivision (b) may nevertheless be recoverable in the discretion of the court if 'reasonably necessary to the conduct of the litigation . . . .' (*Ladas* v. *California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 [23 Cal.Rptr.2d 810].) Therefore, a trial court's decision as to whether an item of costs is proper is reviewed for abuse of discretion.

The trial court's award of costs for service of process was proper. The amount actually incurred in effecting service of process by a registered process server is specifically recoverable under Code of Civil Procedure section 1033.5, subdivision (a)(4)(B). Housing Corporation set forth in detail in its memorandum of costs each item of service claimed and attached to its opposition to Citizens' motion to tax cost the copies of the proofs of service for each item claimed in the memorandum. Each item was served by a registered process server. We find no abuse of discretion by the trial court in awarding this item of costs.

## IV

### DISPOSITION

The judgment is affirmed. Respondents are awarded costs of appeal.

Lillie, P. J., and Johnson, J., concurred.

On November 14, 1995, the opinion was modified to read as printed above.