[No. A074348. First Dist., Div. One. Feb. 10, 1997.]

LEAGUE FOR PROTECTION OF OAKLAND'S ARCHITECTURAL
AND HISTORIC RESOURCES, Plaintiff and Appellant, v.
CITY OF OAKLAND et al., Defendants and Respondents;
MONTGOMERY WARD & CO., INC., et al., Real Parties in Interest and
Respondents.

COUNSEL

Brandt-Hawley & Zoia, Susan Brandt-Hawley and Rose M. Zoia for Plaintiff and Appellant.

Jayne W. Williams, City Attorney, Joyce M. Hicks, Assistant City Attorney, Ralph Wheeler, Donnell W. Choy and Mark P. Wald, Deputy City Attorneys, Crosby, Heafey, Roach & May, Kathy M. Banke and Paul D. Fogel for Defendants and Respondents.

Buchalter, Nemer, Fields & Younger, Richard de Saint Phalle and Mark C. Goodman for Real Parties in Interest and Respondents.

## OPINION

SWAGER, J.—Following a hearing, the trial court denied appellant's petition for writ of mandate brought pursuant to Code of Civil Procedure section 1094.5 and Public Resources Code section 21168. Appellant argues that the trial court erred by finding that respondents are not required by the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)[1] to prepare an environmental impact report (EIR) for approval of the demolition of the Montgomery Ward Building on East 14th Street in Oakland. We reverse the judgment, based upon our conclusion that under the governing definitions and the facts presented the Montgomery Ward Building is a historical resource, which may not be approved for demolition without preparation of an EIR.

### FACTS

The Montgomery Ward Building is an eight-story, nine-hundred-and-fifty-thousand-square-foot store and mail-order warehouse of reinforced concrete frame and slab floors which was originally constructed in 1923. It was thereafter expanded by the addition of connected warehouse buildings and a multistory parking garage so that it occupied a "full block lot." Although at least five separate structures were built, they are architecturally integrated and function as a single building. It is the "largest industrial building in Oakland, . . . prominent on the East Oakland skyline." The building was designed as a utilitarian warehouse, with Arts and Crafts-Gothic detailing of the towers, an arcaded top floor, arched windows, and large expanses of steel sash. It became the first branch of Montgomery Ward Company in California, and distributed merchandise throughout the western states, much of it manufactured by local enterprises. The neighborhood surrounding the building was primarily residential when the building was constructed in 1923, but is now an area of dense industrial and commercial uses.

By 1986, Montgomery Ward Company ceased operations on the site and vacated the building. It has since fallen into severe disrepair, with peeling paint, broken windows, graffiti, and numerous code violations, including the presence of asbestos-containing materials. The building sustained slight damage in the 1989 Loma Prieta earthquake, but has suffered no structural degradation.

---

[1]All further statutory references are to the Public Resources Code unless otherwise indicated. All references to Guidelines are to the state CEQA Guidelines, promulgated by the State Resources Agency and found in title 14, section 15000 et seq. of the California Code of Regulations. The Guidelines are accorded great weight by the courts in interpreting the provisions of CEQA. (*Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 564, fn. 3 [276 Cal.Rptr. 410, 801 P.2d 1161].)

Acting in response to public objections to the continuing deterioration of the Montgomery Ward Building, on October 17, 1995, the Oakland City Council directed the office of economic development and employment to formulate a plan for redevelopment of the property as a community shopping center. The City of Oakland (City) subsequently entered into an agreement with Montgomery Ward Company to acquire the building and property for $3.6 million, plus the cost of an initial CEQA study. The money is to be used by Montgomery Ward to demolish the building. Under the agreement, the City is obligated following the demolition to convey the property to the redevelopment agency, which thereafter, in partnership with Montgomery Ward, will jointly redevelop the property "with an approximately 102,400 square foot commercial center." This plan to develop the property under the agreement was conceptual in nature, but did assure "that some future development will occur on the site."

An initial study was conducted and a mitigated negative declaration for the proposed Montgomery Ward redevelopment project was prepared and released for public review in December of 1995. The initial study indicated that the Montgomery Ward Building had been "preliminarily designated as 'B+a3' " by the Oakland Cultural Heritage Survey (OCHS) in a report issued in September of 1995, and was "also considered to be eligible for the National Register of Historic Places. According to this report, the Montgomery Ward store and warehouse . . . is an outstanding example of an early 20th century utilitarian-Arts and Crafts warehouse with Gothic revival overtones." The alterations of the building were noted, as was its "historic importance" as a reflection of "national businesses and industries in Oakland."

A component of the City's general plan is the historic preservation element which was promulgated to "encourage preservation of significant older properties and areas which have been designated as Landmarks, Preservation Districts, or Heritage Properties." The OCHS is referred to in the general plan as "an ongoing comprehensive historical and architectural survey conducted by the City Planning Department since 1979. All individual properties are thoroughly researched, documented and evaluated according to an A-B-C-D-E rating scale. Possible historic districts and other historically significant property groupings are identified and ranked either as 'Areas of Primary Importance' (APIs) or 'Areas of Secondary Importance' (ASIs)."[2] OCHS ratings "closely parallel those of [the] National Register Bulletin," and are used for purposes of "environmental review" and identification of structures for potential State Historical Building Code, City

---

[2]As requested by appellant, we take judicial notice of the OCHS, the historic preservation element of the City's general plan and the accompanying technical report issued by

landmark and National Register eligibility, but do not constitute final pres-
ervation determinations. Any structure receiving at least a "B" rating, such
as the Montgomery Ward Building, is considered of *"major historical* or
architectural value," with most individually eligible for the National Register
and all "eligible for City landmark designation." (Italics added.)

The OCHS rating of B+a3 was assigned to the Montgomery Ward Build-
ing "particularly for its design quality and type/style and historical associa-
tions." The OCHS indicates that the "Survey rating makes it a historic
property under Oakland's Historic Preservation Element. It meets the defi-
nition of a Historic Structure in the Oakland Unreinforced Masonry (URM)
ordinance. This building appears individually eligible for the National Reg-
ister of Historic Places in the context of masonry buildings (commercial) in
Oakland."

The technical report which accompanies the historic preservation element
also states that "for CEQA purposes" any facilities rated "either 'A' or 'B' "
by the OCHS are "considered 'historic' " in the City of Oakland.[3] The
technical report adds that during CEQA Initial Studies, any "significant
effects on these properties" must be identified, "and either the effects are
mitigated to a nonsignificant level or an EIR is required."

Upon noting the B+a3 rating given to the Montgomery Ward Building by
the OCHS, the initial study proposed five mitigation measures: (1) prepara-
tion of an "historic resources documentation report" to provide historic
material for City archives; (2) a historical building survey to "further
document this historic structure"; (3) design of the proposed shopping center
to "reflect elements of the Montgomery Ward building's original architec-
ture"; (4) display on the site of a plaque or marker commemorating the

---

the City. (Evid. Code, § 452, subd. (c); *Carleton v. Tortosa* (1993) 14 Cal.App.4th 745,
753-754, fn. 1 [17 Cal.Rptr.2d 734]; *Olson v. County of Sacramento* (1974) 38 Cal.App.3d
958, 964 [113 Cal.Rptr. 664]; *Agostini v. Strycula* (1965) 231 Cal.App.2d 804, 806 [42
Cal.Rptr. 314].) We also take judicial notice of the contents of the declaration of Andrew
Dana Altman, manager of the City's comprehensive planning division of the office of
planning and building, filed in the related writ proceeding in this court (*League for Protection
of Oakland's etc. Historic Resources v. City of Oakland*, A074257). (Evid. Code, § 452, subd.
(d); *In re Rocco M.* (1991) 1 Cal.App.4th 814, 819 [2 Cal.Rptr.2d 429]; *Garcia v. Sterling*
(1985) 176 Cal.App.3d 17, 22 [221 Cal.Rptr. 349].)

[3] According to the technical report, all of the following facilities are considered "historic"
under CEQA: "(a) City landmarks, (b) State Historical Landmarks and State Points of
Historical Interest, (c) facilities contributing to an S-7 Preservation Combining Zone, (d)
facilities on or eligible for the National Register of Historic Places, (e) facilities rated either
'A' or 'B' by either the City's Cultural Heritage Survey or the Citywide Preliminary
Historical and Architectural Inventory, and (f) facilities contributing to Areas of Primary or
Secondary Importance (APIs and ASIs) identified by either the Survey or Inventory."

building; and (5) consultation with a qualified archeologist to monitor excavation for discovery of any possible cultural resources. The initial study concluded that "With these mitigation measures, the project will result in less than significant impacts to cultural resources." The proposed mitigated negative declaration was subsequently circulated for public review and comment.

An appeal of the proposed mitigated negative declaration was filed on January 11, 1996, by the Oakland Heritage Alliance (OHA), a group of more than 800 members which monitors projects with potential impacts upon cultural and architectural resources in the City. In the administrative appeal and subsequent public hearing before the City Planning Commission, the OHA protested the lack of an EIR and the inadequacy of the mitigation measures. Alternatives to demolition were mentioned, including concepts presented by two local architects to preserve, renovate and remodel the building into an office, retail and condominium complex. The OHA also submitted a letter from State Historic Preservation Officer[4] Cherilyn Widell, who offered her opinion that the building "appears eligible for listing in the National Register of Historic Places . . ." as "one of the city's most important examples of early twentieth century industrial architecture."

The City Landmarks Preservation Advisory Board agreed in a letter to the City Office of Planning and Building Environmental Review coordinator dated January 11, 1996, that the Montgomery Ward Building, although "not a City landmark, . . . does appear eligible for listing on the National Register and received a B+a3 rating," but supported the proposed negative declaration with two minor changes to the mitigation measures.

A staff report to the City Planning Commission in response to the OHA appeal also mentioned the OCHS rating of B+a3 and possible eligibility of the building for the National Register of Historic Places, but stated: "However, the building has not been nominated or placed on the National Register of Historic Places, is not a City Landmark, is not on the City's Historic Preservation Study List, and is not subject to either the Unreinforced Masonry Ordinance or Earthquake Repair Ordinance regulations and related definitions of 'Historic Properties.'" The same report concluded that "based

---

[4]The State Historic Preservation Officer, who is appointed by the Governor, serves as the executive secretary of the State Historic Resources Commission, which identifies and designates properties to be included in the National Register of Historic Places and the California Register, and the chief administrative officer of the Office of Historic Preservation in the Department of Parks and Recreation. (§§ 5020.6, 5024.1.) Among other duties, the State Historic Preservation Officer also oversees the formulation of policies to preserve and maintain state-owned historical resources. (§§ 5024-5024.5.)

on the lack of landmark identification or study list placement of the subject property, the existence of numerous additions over the years to the building which have degraded the visual quality of the structure and resulted in a questionable eligibility status for National Register placement, and the incorporation of several mitigation measures included in the Negative Declaration to offset the impacts associated with demolition of the structure, the proposed project does not warrant a 'yes' on the Initial Study checklist, nor does it create an unmitigatable significant environmental impact."

Following the hearing, the City Planning Commission rejected the OHA appeal and approved the negative declaration on February 7, 1996. Appellant filed a petition for writ of mandate on March 11, 1996, and sought a temporary restraining order to prevent demolition of the building. Meanwhile, the City purchased the building from Montgomery Ward Company and entered into an agreement to proceed with asbestos abatement and demolition work. The temporary restraining order was denied, and the parking structure of the building was subsequently demolished. The petition for writ relief was also denied after a hearing, and this appeal followed. We granted appellant's petition for writ of supersedeas to stay further demolition activities.

DISCUSSION

■■■ Appellant maintains that the Montgomery Ward Building must be classified as a "protected historic resource" for purposes of CEQA, and therefore any significant impact to it, such as demolition, must be preceded by an EIR rather than merely a negative declaration. Appellant further argues that the mitigation measures listed by the City fail to reduce the impacts upon the building to less than significant levels. The resolution exempting the Montgomery Ward Building demolition project from the City's demolition ordinance has also been challenged by appellant. Respondents reply that the building has not been "officially designated" as "historic property" in the National Register, by the State of California, or in any formal City register, and so is not a historical resource as defined by CEQA for which an EIR is required.

I. *The CEQA Standards.*

■■■ Under section 21168.5, our review of respondents' efforts to comply with CEQA " 'shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence.' (*Citizens of Goleta Valley* v. *Board of*

*Supervisors* (1990) 52 Cal.3d 553, 564 [276 Cal.Rptr. 410, 801 P.2d 1161] . . . .)" (*Sequoyah Hills Homeowners Assn.* v. *City of Oakland* (1993) 23 Cal.App.4th 704, 712 [29 Cal.Rptr.2d 182]; see also *Association for Protection etc. Values* v. *City of Ukiah* (1991) 2 Cal.App.4th 720, 727-728 [3 Cal.Rptr.2d 488].) Our limited function is to determine " '. . . whether policymakers have been adequately informed of the consequences of their decisions, and whether the public has sufficient information to evaluate the performance of their elected officials.' [Citation.]" (*Schaeffer Land Trust* v. *San Jose City Council* (1989) 215 Cal.App.3d 612, 620 [263 Cal.Rptr. 813].)

Sections 21100 and 21151 require that all lead and local agencies prepare, or cause to be prepared by contract and certify the completion of an EIR on any project they intend to carry out or approve which may have a significant effect on the environment. If a lead agency determines: "There is no substantial evidence, in light of the whole record" that the project may have a significant effect on the environment or if it identifies potentially significant effects on the environment but revises the project through mitigation measures so that the effects are insignificant, it shall then adopt a negative declaration and no EIR is then required. (§§ 21080, subd. (c), 21064.) "However, the Supreme Court has recognized that CEQA requires the preparation of an EIR 'whenever it can be fairly argued on the basis of substantial evidence that the project may have significant environmental impact.' [Citations.] Thus, if substantial evidence in the record supports a 'fair argument' significant impacts or effects may occur, an EIR is required and a negative declaration cannot be certified." (*Quail Botanical Gardens Foundation, Inc.* v. *City of Encinitas* (1994) 29 Cal.App.4th 1597, 1602 [35 Cal.Rptr.2d 470].) The burden is on the petitioner to demonstrate by citation to the record the existence of substantial evidence supporting a fair argument of significant environmental impact. (*Citizens for Responsible Development* v. *City of West Hollywood* (1995) 39 Cal.App.4th 490, 498-499 [45 Cal.Rptr.2d 917]; *Gentry* v. *City of Murrieta* (1995) 36 Cal.App.4th 1359, 1379 [43 Cal.Rptr.2d 170]; *Leonoff* v. *Monterey County Bd. of Supervisors* (1990) 222 Cal.App.3d 1337, 1348-1349 [272 Cal.Rptr. 372].)

We have previously held that "The 'fair argument' test is derived from section 21151, which requires an EIR on any project which 'may have a significant effect on the environment.' That section mandates preparation of an EIR in the first instance 'whenever it can be fairly argued on the basis of substantial evidence that the project may have significant environmental impact.' (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 75 [118 Cal.Rptr. 34, 529 P.2d 66].) If there is substantial evidence of such impact,

contrary evidence is not adequate to support a decision to dispense with an EIR. (*Long Beach Sav. & Loan Assn.* v. *Long Beach Redevelopment Agency* (1986) 188 Cal.App.3d 249, 264 [232 Cal.Rptr. 772]; *Bowman* v. *City of Petaluma* (1986) 185 Cal.App.3d 1065, 1071 [230 Cal.Rptr. 413]; Guidelines, § 15064, subds. (g), (h).) Section 21151 creates a low threshold requirement for initial preparation of an EIR and reflects a preference for resolving doubts in favor of environmental review when the question is whether any such review is warranted. (*Oro Fino Gold Mining Corp.* v. *County of El Dorado* (1990) 225 Cal.App.3d 872, 881 [274 Cal.Rptr. 720]; *Bowman* v. *City of Petaluma, supra,* at p. 1073.)" (*Sierra Club* v. *County of Sonoma* (1992) 6 Cal.App.4th 1307, 1316-1317 [8 Cal.Rptr.2d 473].) "Restated, when the reviewing court: 'perceives substantial evidence that the project might have such an impact, but the agency failed to secure preparation of the required EIR, the agency's action is to be set aside because the agency abused its discretion by failing to proceed "in a manner required by law." ' [Citation.]" (*Quail Botanical Gardens Foundation, Inc.* v. *City of Encinitas, supra,* 29 Cal.App.4th at p. 1602.) Under the Guidelines, " ' "[s]ubstantial evidence" ' is 'enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached.' (Cal. Code Regs., tit. 14, § 15384, subd. (a).)" (*Stanislaus Audubon Society, Inc.* v. *County of Stanislaus* (1995) 33 Cal.App.4th 144, 152 [39 Cal.Rptr.2d 54].)

The application of this standard by a reviewing court was also considered by us in *Sierra Club* v. *County of Sonoma.* ■ "A court reviewing an agency's decision not to prepare an EIR in the first instance must set aside the decision if the administrative record contains substantial evidence that a proposed project might have a significant environmental impact; in such a case, the agency has not proceeded as required by law. (*Friends of 'B' Street* v. *City of Hayward* [(1980)] 106 Cal.App.3d [988,] 1002 [165 Cal.Rptr. 514].) Stated another way, the question is one of law, i.e., 'the sufficiency of the evidence to support a fair argument.' (*Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d at p. 1073.) Under this standard, deference to the agency's determination is not appropriate and its decision not to require an EIR can be upheld only when there is no credible evidence to the contrary. (See *Citizen Action to Serve All Students* v. *Thornley* (1990) 222 Cal.App.3d 748, 754-759 [272 Cal.Rptr. 83].)" (*Sierra Club* v. *County of Sonoma, supra,* 6 Cal.App.4th at pp. 1317-1318.)

Section 21060.5 defines the "environment" to include "historic" conditions within an area which will be affected by a proposed project. (See also §§ 21001, subd. (b), 21084, subd. (e).) According to section 21084.1, a

"project that may cause substantial adverse change in the significance of an *historical resource* is a project that may have a significant effect on the environment." (Italics added.) " 'A project will normally have a significant effect on the environment if it will . . . [¶] [d]isrupt or adversely affect . . . a property of *historic or cultural significance to a community* or ethnic or social group.' (Guidelines, appen. G, subd. (j).)" (*Gentry v. City of Murrieta, supra,* 36 Cal.App.4th at p. 1418, italics added.) Thus, the significant impacts of a discretionary project upon a historic building must be considered in an EIR. (See *Prentiss v. City of South Pasadena* (1993) 15 Cal.App.4th 85, 92 [18 Cal.Rptr.2d 641].) The crucial issue, then, is whether the Montgomery Ward Building qualifies as a historical resource for purposes of CEQA.

## II.   *The Definition of a Historical Resource Under CEQA.*

According to section 21084.1, a "historical resource" is "a resource listed in, or determined to be eligible for listing in, the California Register of Historical Resources. Historical resources included in a local register of historical resources, as defined in subdivision (k) of Section 5020.1, or deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1, are presumed to be historically or culturally significant for purposes of this section, unless the preponderance of the evidence demonstrates that the resource is not historically or culturally significant. The fact that a resource is not listed in, or determined to be eligible for listing in, the California Register of Historical Resources, not included in a local register of historical resources, or not deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1 shall not preclude a lead agency from determining whether the resource may be an historical resource for purposes of this section."

Thus, as we read the statute, three categories of historical resources have been created by section 21084.1. First, the mandatory provision of the statute specifies that buildings "listed in, or determined to be eligible for listing in, the California Register of Historical Resources"[5] must in all cases be granted status as historical resources. Second, buildings "included in a local register of historical resources, as defined in subdivision (k) of Section 5020.1, or deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1," are presumptively historical resources unless the preponderance of

[5]The California Register of Historical Resources is "an authoritative guide in California to be used by state and local agencies, private groups, and citizens to identify the state's historical resources and to indicate what properties are to be protected, to the extent prudent and feasible, from substantial adverse change." (§ 5024.1, subd. (a).)

the evidence demonstrates otherwise. Third, buildings which do not fall within the mandatory or presumptive categories may still be deemed historical resources at the discretion of the lead agency.

■ We decline to adopt the position suggested by respondents that nothing less than official designation of a building as historic in a recognized register suffices to trigger CEQA requirements. The language of sections 21084.1 and 5020.1 does not demand formal listing of a resource in a national, state or local register as a prerequisite to "historical" status. The statutory language is more expansive and flexible.

Section 21084.1 includes within the mandatory definition of historical resources all buildings either "listed in, *or determined to be eligible for* listing" in the California Register. Section 5020.1, subdivision (k), defines presumptively historic buildings in similarly disjunctive language by stating that a " '[l]ocal register of historical resources' means a list of properties officially designated *or* recognized as historically significant by a local government pursuant to local ordinance or resolution." (Italics added.) The California Register description of historical resources also encompasses eligibility in addition to listing; it provides that "historical resources" shall include "California properties formally determined *eligible for, or listed* in, the National Register of Historic Places." (§ 5024.1, subd. (d)(1), italics added.) Section 21084.1 provides further indication that official designation is not the sole qualifying standard by stating that even those resources not listed or determined to be eligible in the state or local register or survey may nevertheless be classified as historical by a lead agency. Even the City's historic preservation element takes a consistent approach; it provides: "For purposes of environmental review under the California Environmental Quality Act, any change that has the potential to disqualify an existing or *Potential Designated Historic Property* from Landmark or Preservation District *eligibility* or may have substantial adverse effects on the property's Character-Defining Elements will normally, unless adequately mitigated, be considered to have a significant effect." (Italics added.) And finally, if historical resources were limited to properties actually listed, owner resistance to inclusion or mere government inaction might forestall preparation of an EIR for a worthy structure, a result certainly not sanctioned by CEQA. (See *Orinda Assn.* v. *Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1153, fn. 3 [227 Cal.Rptr. 688].)

Thus, the lack of formal inclusion of the Montgomery Ward Building in a historical register does not absolve the City of the obligation to proceed with an EIR. Instead, we examine the entirety of the evidence to render a determination of eligibility of the building as a historical resource.

III.  *The Montgomery Ward Building as a Historical Resource.*

The evidence amassed in the initial study persuades us that the low threshold of a "fair argument" of significant impacts upon a historical resource has been met. Upon review of the record we find that the Montgomery Ward Building must be placed within the category of resources *presumed* to be historical within the meaning of sections 21084.1 and 5020.1, subdivision (k).

The City's own internal documentation consistently recognized the historical significance of the Montgomery Ward Building. It was described in the official City historical survey as at least arguably, if not definitively, eligible for inclusion in the National Register of Historic Places. The OCHS was an elaborate, comprehensive survey authorized and conducted by the City as part of the general plan for purposes of "environmental review" and definitive classification of buildings as historic landmarks. It was not merely an *information gathering endeavor for general classification and inventory* purposes. The City Landmarks Preservation Advisory Board agreed with the OCHS that the building appears "eligible for listing on the National Register," as did the State Historic Preservation Officer. The "B+a3" rating given to the building by the City placed it within the category of "major" historical importance, which rendered it "an historic property under Oakland's Historic Preservation Element" of the City's general plan and "eligible for City landmark designation." The Historic Preservation Element of the City's general plan adds that "for CEQA purposes" the building is "considered historic." In the accompanying technical report, the necessity of an EIR absent mitigation of impacts to the building to insignificant levels was noted. Under the particular circumstances presented to us, we regard the authoritative "historic" designation of the property in the City's general plan as equivalent to recognition of it "as historically significant" by local ordinance or resolution under section 5020.1, subdivision (k).

We accordingly conclude that the Montgomery Ward Building must be classified as a presumptively "historical resource" within the meaning of section 21084.1. We further conclude that the presumption of historic status has not been rebutted by any evidence in the record.[6]

The proposed demolition of the building can hardly be considered anything less than a significant effect. In a related context, subdivision (q) of

---

[6]We therefore need not determine whether the building meets the requirements for *mandatory* classification as historical under section 21084.1 for resources listed in or determined to be eligible for listing in the California Register. We do not resolve in this appeal the issue of whether the mandatory provisions of section 21084.1 may be triggered by a determination of eligibility by local action or must come from the State Historical Resources Commission.

section 5020.1 specifies that " '[s]ubstantial adverse change' means *demolition, destruction,* relocation, or alteration such that the significance of an historical resource would be impaired." (Italics added.) We therefore further conclude that unless the mitigation measures proposed by the City reduce the effects of the demolition of the building to less than significant levels, an EIR is mandatory. (*Gentry* v. *City of Murrieta, supra,* 36 Cal.App.4th at p. 1372.)

## IV. *The Mitigation Measures.*

The approved mitigation measures essentially include documentation of the structure in a report and survey, display of a commemorative plaque, and a new shopping center with design features which reflect architectural elements of the demolished building. Documentation of the historical features of the building and exhibition of a plaque do not reasonably begin to alleviate the impacts of its destruction. A large historical structure, once demolished, normally cannot be adequately replaced by reports and commemorative markers. Nor, we think, are the effects of the demolition reduced to a level of insignificance by a proposed new building with unspecified design elements which may incorporate features of the original architecture into an entirely different shopping center. This is so particularly where, as here, the plans for the substitute building remain tentative and vague. We conclude that the stated mitigation measures do not reduce the effects of the demolition to less than a level of significance. (*Quail Botanical Gardens Foundation, Inc.* v. *City of Encinitas, supra,* 29 Cal.App.4th at pp. 1606-1607.)

In view of the whole record and the City's repeated recognition of the historical significance of the building, substantial evidence supports a fair argument that significant impacts may occur. An EIR is required to identify and examine the full range of feasible mitigation measures and alternatives to demolition. (See *Rio Vista Farm Bureau Center* v. *County of Solano* (1992) 5 Cal.App.4th 351, 376 [7 Cal.Rptr.2d 307].) Accordingly, the City failed to proceed in the manner required by law by certifying the mitigated negative declaration. (*Quail Botanical Gardens Foundation, Inc.* v. *City of Encinitas, supra,* 29 Cal.App.4th at p. 1607.)

### DISPOSITION

The judgment is reversed and the case is remanded to the trial court with directions to enter a judgment granting the petition, to issue a peremptory writ of mandate directing the City to set aside the approval and certification of the mitigated negative declaration for the Montgomery Ward redevelopment project and any related approvals for demolition of the Montgomery

Ward Building, and to grant such injunctive and other relief as may be appropriate and consistent with this opinion.[7, 8] The terms of our stay order issued June 19, 1996,[9] shall remain in effect until the remittitur issues.

Costs on appeal are awarded to appellant.

Strankman, P. J., and Dossee, J., concurred.

A petition for rehearing was denied March 6, 1997, and the petition of defendants and respondents for review by the Supreme Court was denied May 14, 1997.

---

[7]In light of the conclusions we have reached on the CEQA issues and the disposition of this appeal, the ordinance exempting the project from the requirements of the City's demolition ordinance, section 6-9.07 of the Oakland Municipal Code, no longer has efficacy, and we need not discuss appellant's contention that it was invalidly enacted. We also, therefore, need not take judicial notice of the ordinance amending Oakland Building Code section 302(c) and (d), as appellant has requested.

[8]We decline appellant's request for guidance upon remand on the issue of future evaluation of feasible alternatives to the project in view of the demolition of the parking structure. Our Supreme Court's guidance in this area as set forth in *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376 [253 Cal.Rptr. 426, 764 P.2d 278] is clear.

[9]See *League for Protection of Oakland's etc. Historic Resources* v. *City of Oakland, supra,* A074257.