[No. F050952. Fifth Dist. Feb. 15, 2008.]

VALLEY ADVOCATES et al., Plaintiffs and Appellants, v.
CITY OF FRESNO et al., Defendants and Respondents;
PEREZ, WILLIAMS & MEDINA, Real Party in Interest and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts VII. and VIII. of Discussion.

COUNSEL

Law Offices of Richard L. Harriman and Richard L. Harriman for Plaintiffs and Appellants.

James C. Sanchez, City Attorney, and Kathryn C. Phelan, Deputy City Attorney, for Defendants and Respondents.

Perez, Williams & Medina and Robert Gray Williams for Real Party in Interest and Respondent.

OPINION

**DAWSON, J.**—This appeal concerns an application to demolish a building located in downtown Fresno and expand a parking lot onto the cleared land. The building is one of two nearly identical 90-year-old apartment buildings located next to one another. After receiving the site plans, the City of Fresno (City) (1) decided not to list either building in the local register of historic resources, (2) rejected an argument that the buildings were historic resources for purposes of the California Environmental Quality Act (CEQA),[1] (3) determined the proposed project was exempt from CEQA, and (4) approved the project.

A local organization and a local resident sought a writ of mandate alleging City violated various CEQA provisions in (1) rejecting the argument that the buildings were historical resources for purposes of CEQA and (2) deciding the project was exempt from CEQA. They contend City subverted the CEQA process, especially its public notice provisions, by treating City's earlier denial of an application to list the buildings in the local register of historical resources as resolving the question whether the buildings were an historic resource *for purposes of CEQA.* They also argue City's initiation and denial of a listing application before it began a formal CEQA review of the project was a devious way to avoid applying the fair argument standard to the question whether the buildings were historically significant.

We reach the following conclusions. First, at the meeting where City determined the project was exempt from CEQA, it was misinformed about its discretionary authority to determine the buildings were historic resources. As a result, City cut short its inquiry into the historic significance of the buildings and relied too heavily on its earlier decision not to list the buildings in the local register of historic resources. Second, the claim that City failed to exercise its discretion in accordance with CEQA requirements is not a

---

[1] Public Resources Code section 21000 et seq. All statutory references are to the Public Resources Code unless otherwise indicated.

collateral attack on City's decision not to list the buildings in the local register. Third, in the circumstances of this case, the fair argument standard does not apply to the question whether the buildings are historic resources for purposes of CEQA.

Based on these conclusions, the judgment will be reversed and the matter remanded for further proceedings.

## FACTS

Appellant Valley Advocates alleged that it is a California nonprofit public benefit corporation that initiates and prosecutes legal actions in the public interest in the Central Valley of California. Appellant Dallas B. Debatin is an individual who resides in the City, owns real property in the vicinity of the proposed project, and pays property taxes in the City and County of Fresno. For purposes of this opinion, we will refer to Valley Advocates and Mr. Debatin collectively as Valley Advocates.

The respondents in this appeal are City, its city council (City Council), and the law firm of Perez, Williams & Medina (Perez).

In September 2004, Perez submitted an application (Application S-04-399) for a minor amendment to the City planning and development department. Application S-04-399 proposed a 2,080-square-foot addition to Perez's existing office building and the demolition of a two-story four-plex apartment building to expand available parking. The proposed project is located in downtown Fresno.

A nearly identical four-plex apartment building, or sister building, is located immediately to the south of the building Perez proposes to demolish. The two four-plex apartment buildings were constructed in 1913 or 1914 in the craftsman style. W.P. Cutting, using a contractor named C. Samuelson, built the buildings and rented the apartments to working class tenants. As a result, the two buildings are sometimes referred to as the W.P. Cutting flats (Flats).

On October 8, 2004, Application S-04-399 was routed to various departments and agencies for review and comments. For example, the application was sent to the historic preservation project manager and the Fulton/Lowell Design Review Committee.

A meeting of the Fulton/Lowell Specific Plan Project Review Subcommittee was held on December 6, 2004. The subcommittee recommended denial of

the demolition request. The record reflecting that recommendation is signed by Debatin, as chairperson of the Fulton/Lowell Design Review Committee.

Policy G-11-c of the 2025 Fresno General Plan provides that, before the issuance of a formal demolition order by City involving a structure over 50 years old, the historic preservation staff shall review the potential listing of the structure in the local register and, if necessary, refer the listing to the Historic Preservation Commission. To comply with this policy, Application S-04-399 was referred to City's historic preservation project manager to determine if the Flats should be referred to the Historic Preservation Commission.

City's historic preservation project manager prepared a report for City's Historic Preservation Commission that stated the staff recommended (1) denying the request to demolish one of the Flats and (2) nominating the Flats to City's local register of historic resources. On December 13, 2004, at a noticed public hearing, the Historic Preservation Commission accepted the recommendation and voted four to zero to nominate the Flats for placement in the local register. As a result, the nomination was scheduled for hearing before the City Council.

On February 15, 2005, the City Council conducted a public hearing to consider the nomination of the Flats for listing in the local register. Various people testified at the hearing, including James Oakes, an architect hired by Perez. Oakes testified that he, "as a preservation specialist[,] had looked carefully at the building" and he could not agree that the buildings were eligible for listing in the local register of historic resources.

At the hearing, the City Council considered a motion to designate the southernmost of the Flats to the local register and deny the nomination as to the one that Perez proposed to demolish. The motion received three "yes" votes (Councilmembers Calhoun, Dages and Sterling) and four "no" votes (Councilmembers Boyajian, Duncan, Perea and Westerlund). The City Council then considered a motion to deny the listing nomination as to both of the Flats. The motion carried by a vote of four to three, with Councilmembers Calhoun, Perea and Sterling voting no. After these two votes, the following exchange occurred:

"Calhoun[:] Can I just ask for a point of clarification. Does that mean that the other building, where does that leave the second building[?]

"Dages[:] Both of them have been denied to the historical register.

"Calhoun[:] So that means that both can be taken down at this point now right.

"[City Attorney] Montoy[:] Not necessarily. They still have to go through a process because they're still 50 years old.

"Dages[:] Yeah the only issue before us was whether to put them on the register.

"Calhoun[:] I thought we just . . . .

"[City Attorney] Montoy[:] The only issue was whether to designate them but the site plan process must still be undertaken, the demolition[2]

"Calhoun[:] But one of them is going to come down now.

"Dages[:] No that's not the case . . . .

"Calhoun[:] Sure it is.

"Dages[:] . . . at all.

"Calhoun[:] Well sure it is.

"Dages[:] No it isn't. Item's over. Let's go on to the next item at 10:00.

"Calhoun[:] No, President I have the right to . . . [¶] . . . [¶] . . . I'm out of order Mr. President, trying to understand the implications of this vote?

"Dages[:] The vote is already over with Mr. Calhoun."

On March 11, 2005, City's Planning and Development Department filed a notice in the city clerk's office that the department found the proposed project to be exempt from the requirements of CEQA under California Code of Regulations, title 14, sections 15301 and 15332.[3] These exemptions concerned (1) additions to and demolition of certain residential structures and (2) infill projects.[4]

---

[2] This statement of the city attorney is consistent with her earlier statement at the hearing that "[t]he site plan, the demolition, all that is not before you today." Shortly after the city attorney mentioned the site plan and demolition, Councilmember Boyajian stated: "I would just [say] also that the only issue is whether it's historic, CEQA doesn't come into pla[y] at this point."

[3] Further references to California Code of Regulations, title 14, section 15000 et seq. shall be to the Guidelines.

[4] Guidelines section 15301 defines class 1 exemptions to include certain additions of less than 2,500 square feet to existing structures and the demolition of certain residential structures that contain less than six dwelling units. (Guidelines, § 15301, subds. (e), (l).) A class 32 exemption applies to certain infill development projects. (Guidelines, § 15332.)

On March 14, 2005, City received a letter from Jeanette Jurkovich objecting to the proposed use of categorical exemptions in connection with Application S-04-399. Among other things, the letter argued the City Council was required to make an independent determination of historic significance of a resource by considering the criteria set forth in Guidelines section 15064.5, subdivision (a)(3). City treated the letter as an appeal of a CEQA finding to an elected decisionmaking body in accordance with section 21151, subdivision (c). Valley Advocates participated in the appeal by submitting letters and appearing through its attorney at the May 3, 2005, City Council meeting.

A staff report prepared for the City Council meeting addressed whether the project might cause a significant impact to an historic resource by stating that the "Subject Building is not a 'historic resource' under CEQA because . . . Council has not treated nor chosen to treat the building as historical." The staff report did not inform the City Council that it could, in an exercise of its discretion under CEQA, make a new inquiry into whether to treat the Flats as an historic resource. Instead, the staff report stated: "CEQA does not define historic resources as only those listed on a register. However, as discussed above, the Subject Building does not fall into any of the non-listed categories in the definition either."

At the May 3, 2005, meeting, the City Council considered the appeal of the environmental findings relating to the applicability of the exemptions. During the meeting, Darrell Unruh of City's Planning and Development Department advised the City Council by reiterating the conclusions of the staff report and stating: "Once the action is taken by the City Council under our historic preservation ordinance, that is the, the answer to the question of whether a property is historic or not. So, from my perspective CEQA does not provide direction that once that action is taken, that action would be second guessed because that authority is placed in the City Council to make that determination."[5]

---

[5] This advice misstates the law. There is no second-guessing because there are two separate choices. The prior choice of the City Council regarding listing does not prevent that City Council (or a subsequent council) from choosing differently when addressing whether the property is an historic resource for purposes of CEQA. The advice would have been legally accurate had it stated: "Once the City Council denies an application under our historic preservation ordinance, that only answers the question whether the property is presumed to be historic. So, from my perspective, once a listing application is denied, CEQA authorizes a lead agency to make a new determination regarding whether a property is historic or not. The CEQA determination might be the same as the listing determination, but it might be different because of the discretion CEQA gives to a lead agency."

The staff report and Unruh avoided the existence of discretionary authority to consider the issue of historicity further and, thus, the question of how the City Council might choose to exercise its discretion. As a result, the staff report and Unruh were not confronted with the need to discuss the criteria contained in Guidelines section 15064.5, subdivision (a)(3) and

Subsequently, a council member stated his understanding of the advice received by the City Council: "[N]ow my understanding is in the analysis that we're going through here today, is that in fact it has been determined from the very beginning of the analysis based on what the Council previously did, is that this is not an historic resource. Therefore it falls outside CEQA."

Later at that meeting, the City Council voted four to one[6] to confirm the adoption of the categorical exemption and deny the appeal.

On June 17, 2005, City's Planning and Development Department approved Application S-04-399.

## PROCEEDINGS

On June 8, 2005, Valley Advocates filed a verified petition for writ of mandamus and complaint for declaratory and injunctive relief that challenged City's determinations that the Flats were not historical resources for purposes of CEQA and that the project was categorically exempt.

City and City Council filed their answer to the verified petition in December 2005, and Perez filed its answer on January 25, 2006.

On the day of the hearing, May 24, 2006, the superior court issued a minute order denying the petition for writ of mandate as well as the requests for declaratory and injunctive relief, and the superior court directed the city attorney's office to prepare the written order.

On June 5, 2006, the superior court filed a 10-page written decision that denied Valley Advocate's petition and directed the entry of judgment in favor of City and Perez. Notice of entry of judgment was filed on June 9, 2006.

Valley Advocates filed its notice of appeal on August 3, 2006.

## DISCUSSION

Valley Advocates contends that City's environmental review of the proposed project violated CEQA in a number of ways. The violations alleged include the claim that City improperly analyzed whether the Flats should be regarded as historical resources for purposes of CEQA. We agree that City committed reversible error in its analysis whether the Flats were historical

---

were able to avoid making a recommendation about the application of that criteria that contradicted the earlier staff recommendation to City's Historic Preservation Commission.

[6] One council member abstained and another was absent.

resources for purposes of CEQA. Because the matter will be remanded for further proceedings, the existence of many of the procedural errors alleged by Valley Advocates need not be decided in this opinion.

## I. *Background on CEQA's Treatment of Historical Resources*

■ CEQA and the Guidelines define the "environment" to include "objects of historic or aesthetic significance." (§ 21060.5; Guidelines, § 15360.) The fact that an object of historic significance was manmade does not preclude it from being part of the environment protected by CEQA. (Guidelines, § 15360.) "A project that may cause a substantial adverse change in the significance of an historical resource is a project that may have a significant effect on the environment." (§ 21084.1.) Such a project would require the preparation of an environmental impact report (EIR) or a mitigated negative declaration. (§§ 21151, 21100, 21080, subd. (c)(2), 21064; *League for Protection of Oakland's etc. Historic Resources v. City of Oakland* (1997) 52 Cal.App.4th 896, 904 [60 Cal.Rptr.2d 821] (*League for Protection of Oakland*).) Further, "[a] categorical exemption shall not be used for a project which may cause a substantial adverse change in the significance of a[n] historical resource." (Guidelines, § 15300.2, subd. (f).)

Section 21084.1 and its implementing Guidelines establish three analytical categories for use in determining whether an object is an historical resource for purposes of CEQA. (See *League for Protection of Oakland, supra,* 52 Cal.App.4th at pp. 906–907 [three categories of historical resources identified as mandatory, presumptive and discretionary].) In this opinion, we will adopt the labels given these three categories in 2 Kostka and Zischke, Practice Under the California Environmental Quality Act (Cont.Ed.Bar 2006) section 20.109, pages 1060 to 1061—namely, (1) mandatory historical resources, (2) presumptive historical resources and (3) discretionary historical resources.

Our analysis of the issues generated by the question whether City erred in determining that the Flats were not historical resources for purposes of CEQA will proceed category by category, starting with mandatory historical resources and ending with discretionary historical resources.

## II. *Mandatory Historical Resources*

### A. *Applicable Text of CEQA and Guidelines*

The category of mandatory historical resources is based on the second sentence of section 21084.1, which states: "For purposes of this section, an historical resource is a resource listed in, or determined to be eligible for listing in, the California Register of Historical Resources."

The Guidelines define the scope of the category of mandatory historical resources by adding one limitation to the text of the second sentence of section 21084.1. Specifically, Guidelines section 15064.5, subdivision (a)(1) provides that "the term 'historical resources' shall include . . . [¶] . . . [a] resource listed in, or determined to be eligible *by the State Historical Resources Commission* . . . for listing in[,] the California Register of Historical Resources (Pub. Res. Code § 5024.1, Title 14 CCR, Section 4850 et seq.)." (Italics added.)

## B. *Contentions of the Parties*

Valley Advocates argues that the Flats are mandatory historical resources. Specifically, Valley Advocates contends that "City must consider [the Flats] as an historic resource, pursuant to . . . section 21084.1 and CEQA Guidelines, section 15064.5, subd. (a)(1)." To support this position, Valley Advocates relies on the following quote taken from page 12 of City's respondent's brief as a complete and accurate statement of law: " 'Based upon the above, if substantial evidence demonstrates that a building is on the State Register or *eligible to be included in the State Register*, the lead agency *must* consider the building to be a historic resource.' ([E]mphasis added [by Valley Advocates.])"

Perez, on the other hand, argues that the Flats are not historical resources because "[t]he determination of eligibility rests solely with the California Historical Resources [C]ommission" and no such determination has been made regarding the Flats.

## C. *Issues*

The parties' contentions and Valley Advocates' reliance on the quote from City's brief present two related questions. First, for purposes of the mandatory historical resources category, who determines whether a building is eligible to be included in the state register?[7] Second, what is the role of an appellate court in reviewing that determination?

---

[7] A closely related question was identified but not answered by the court in *League for Protection of Oakland.* In its opinion, the First Appellate District stated that "[w]e do not resolve . . . whether the mandatory provisions of section 21084.1 may be triggered by a determination of eligibility by local action or must come from the State Historical Resources Commission." (*League for Protection of Oakland, supra,* 52 Cal.App.4th at p. 908, fn. 6.) Here we consider the mandatory category as defined by the Guidelines, not by the statute alone. The court in *League for Protection of Oakland* did not consider Guidelines section 15064.5 because it was adopted after that decision.

## D. *Interpretation of the Guidelines*

### 1. *Plain meaning*

The plain language of Guidelines section 15064.5, subdivision (a)(1) identifies the entity that makes the determination of eligibility for purposes of the mandatory historical resources category. It refers to a resource "determined to be eligible by the State Historical Resources Commission . . . for listing in the California Register of Historical Resources." Valley Advocates provides no analysis of this language and, instead, avoids mentioning it. Nonetheless, the language in the Guidelines is clear and unambiguous. Only the State Historical Resources Commission's determinations of eligibility trigger the mandatory historical resources provision.

### 2. *Validity of the Guidelines' interpretation*

■ Courts are not required to accept automatically statutory interpretations contained in the Guidelines. Except where the Guidelines are clearly unauthorized or erroneous, however, courts do accord the Guidelines great weight when interpreting CEQA. (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 428, fn. 5 [53 Cal.Rptr.3d 821, 150 P.3d 709].)

Just as Valley Advocates' appellate briefing avoids a direct reference to the interpretation of the mandatory historical resource provision set forth in Guidelines section 15064.5, subdivision (a)(1), it also fails to address the more specific question whether that regulatory provision is clearly unauthorized or erroneous.

Based on the lack of any argument to the contrary, we do not reach the questions whether the interpretation of section 21084.1's mandatory historical resource provision set forth in Guidelines section 15064.5, subdivision (a)(1) is inconsistent with the statute (i.e., is unauthorized) or is arbitrary, capricious, irrational or unreasonable (i.e., is clearly erroneous). We explicitly note these questions were not raised and are not decided so that this opinion is not mistaken as precedent on those points. (*DCM Partners v. Smith* (1991) 228 Cal.App.3d 729, 739 [278 Cal.Rptr. 778] ["a case does not stand for a proposition neither discussed nor analyzed . . ."].)

## E. *Application of Interpretation in Guidelines*

Whether the Flats have been "determined to be eligible for listing in . . . the California Register of Historical Resources" (§ 21084.1) by the State Historical Resources Commission is a factual question.

The record on appeal contains no evidence that the State Historical Resources Commission listed the Flats or determined that the Flats were eligible for listing on the state register. The record does contain evidence to the contrary. Darrell Unruh of City's planning and development department testified at the May 3, 2005, meeting of the City Council that "the subject building is not on a state register [and] has not been found to be eligible for a state register by the State Historic Preservation Commission . . . ."

Based on the contents of the record and our role as a court of review, we must conclude that the evidence contained in the record is insufficient to support a determination that the Flats are mandatory historical resources for purposes of CEQA.

### III. *Presumptive Historical Resources*

#### A. *Applicable Text of CEQA and Guidelines*

The category of presumptive historical resources is created by the third sentence of section 21084.1, which states: "Historical resources included in a local register of historical resources, as defined in subdivision (k) of Section 5020.1, or deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1, are presumed to be historically or culturally significant for purposes of this section, unless the preponderance of the evidence demonstrates that the resource is not historically or culturally significant."

The Guidelines reiterate this definition by stating that "the term 'historical resources' shall include . . . [¶] . . . [a] resource included in a local register of historical resources, as defined in section 5020.1(k) of the Public Resources Code or identified as significant in an historical resource survey meeting the requirements [of] section 5024.1(g) of the Public Resources Code, shall be presumed to be historically or culturally significant. Public agencies must treat any such resource as significant unless the preponderance of evidence demonstrates that it is not historically or culturally significant." (Guidelines, § 15064.5, subd. (a)(2).)

■ These provisions create three types of presumptive historical resources. The first two types involve a resource included in a local register of historic resources. A " '[l]ocal register of historical resources' " is defined as a "list of properties officially designated *or* recognized as historically significant by a local government pursuant to a local ordinance or resolution." (§ 5020.1, subd. (k), italics added.) The use of the disjunctive "or" has been interpreted to mean that a building is an historic resource if it is either "designated" to a local register or "recognized" as historically significant by local ordinance or resolution. (*League for Protection of Oakland, supra,* 52

Cal.App.4th at pp. 906–907.) The third type of presumptive historical re-source is a resource identified as significant in certain surveys of historical resources. (§ 5024.1, subd. (g).) The historical resource survey must meet all four of the criteria set forth in section 5024.1, subdivision (g). (See pt. III.B.3., *post.*)

### B. *Application to Facts of This Case*

Valley Advocates, in its petition for rehearing, argues that the Flats qualify as one of the three types of presumptive historical resources. Specifically, Valley Advocates contends that under section 5020.1, subdivision (k), the Flats have been "recognized" as historically significant in a manner similar to the recognition given to the Montgomery Ward Building by the City of Oakland. (See *League for Protection of Oakland, supra,* 52 Cal.App.4th at pp. 907–908.) We address all three types of resources that qualify as presumptive historical resources because of ambiguity in Valley Advocates' initial appellate briefing. Also, our discussion of the first and third type of presumptive historical resources will provide context for our analysis of the type relied upon by Valley Advocates.

### 1. *Designated for listing*

First, it is undisputed that the Flats have not been "officially designated" (§ 5020.1, subd. (k)) for inclusion in a formal local register of historical resources. Therefore, we can reach only one conclusion—the Flats did not qualify as the first type of presumptive historical resource when the City Council made its CEQA determinations in May 2005.

### 2. *Recognized by local ordinance or resolution*

Second, Valley Advocates' petition for rehearing asserts that City "adopted resolutions approving and adopting the 2025 Fresno General Plan and the Master Environmental Impact Report (MEIR) for the 2025 Fresno General Plan on November 19, 2002. [4 AR 407] These documents included express findings by the City which recognized . . . the proposed L Street Historic District, along with other specifically adopted local plans which recognized the historical value of the proposed L Street Historic District, including the Central Area Community Plan and the Fulton Lowell Specific Plan."[8] Valley Advocates contends that these resolutions fall within the ambit of subdivision (k) of section 5020.1 and, thus, the Flats qualify as presump-tively historical resources. In other words, Valley Advocates contends that

---

[8] Page 407 of the administrative record is the cover page of the 2025 Fresno General Plan. Pages 148 through 155 of the general plan (pages 595 through 602 of the administrative record) address historical resources. Those pages do not mention the Flats.

City included the Flats in a "list of properties . . . recognized as historically significant by a local government pursuant to a . . . resolution." (§ 5020.1, subd. (k).)

In *League for Protection of Oakland,* upon which Valley Advocates relies, the Montgomery Ward Building had not been officially designated in any formal register of the City of Oakland. (*League for Protection of Oakland, supra,* 52 Cal.App.4th at p. 903.) Nonetheless, the City of Oakland's "own internal documentation consistently recognized the historical significance of the Montgomery Ward Building." (*Id.* at p. 908.) Among other things, the "Historic Preservation Element of the City's general plan [stated] that 'for CEQA purposes' the building is 'considered historic.'" (*Ibid.*) Under the circumstances, the court regarded "the authoritative 'historic' designation of the property in the City's general plan as equivalent to recognition of it 'as historically significant' by local ordinance or resolution under section 5020.1, subdivision (k)." (*Ibid.*) As a result, the court concluded that the Montgomery Ward Building was a presumptively historical resource under section 21084.1. (52 Cal.App.4th at p. 908.)

Here, however, the circumstances surrounding the property that has, allegedly, been recognized as historically significant—i.e., the Flats—are quite different from the circumstances concerning the Montgomery Ward Building in *League for Protection of Oakland.* First, City's own documentation has not "consistently recognized the historical significance of the [Flats]." (*League for Protection of Oakland, supra,* 52 Cal.App.4th at p. 908.) Second, City's general plan does not state that the Flats are considered historic for purposes of CEQA. (52 Cal.App.4th at p. 908.) Third, unlike the City of Oakland, City here expressly rejected an attempt to designate the buildings in question to the formal local register of historical resources. We conclude these circumstances distinguish the recognition given the Flats from the recognition the City of Oakland had given the Montgomery Ward Building.

Further, we conclude that under the circumstances presented here, the building has not been included in a list of properties recognized as historically significant by local ordinance or resolution for purposes of sections 21084.1 and 5020.1, subdivision (k).

Therefore, we conclude that the Flats did not qualify as the second type of presumptive historical resource under sections 21084.1 and 5020.1, subdivision (k).

### 3. *Historical resource survey*

Valley Advocates does not argue explicitly that the Flats are identified as significant in a survey that meets the statutory criteria set forth in paragraphs

(1) through (4) of section 5024.1, subdivision (g).[9] Valley Advocates has, nonetheless, made certain arguments that reference the 1994 Powell Historic Building Survey, Historic Resources Survey.[10]

We have located, and Valley Advocates has cited, no evidence that establishes or supports a reasonable inference that the Flats were identified as significant in a survey meeting all four of the statutory criteria. For instance, the 1994 survey is more than five years old, and there is no evidence that it has been updated in accordance with section 5024.1, subdivision (g)(4). (See *Citizens for Responsible Development v. City of West Hollywood* (1995) 39 Cal.App.4th 490, 502–503 [45 Cal.Rptr.2d 917] (*West Hollywood*) [survey did not meet criterion in subd. (g)(4) because survey was over five years old and had not been updated].)

A request for modification submitted by a nonparty contended that only the first three criteria in section 5024.1, subdivision (g) apply when the survey is being evaluated during a CEQA review as opposed to evaluation for listing in the California Register of Historical Resources. We reject this interpretation. The language in section 5024.1, subdivision (g) refers to a "survey [that] meets *all* of the following criteria" (italics added), and Guidelines section 15064.5, subdivision (a)(2) refers to "an historical resource survey meeting the requirements [of] section 5024.1(g) . . . ." This text does not exclude the fourth criterion from the requirements. Thus, we will not interpret the phrase "the requirements [of] section 5024.1(g)" used in Guidelines section 15064.5, subdivision (a)(2) to mean only the first three requirements of that subdivision. In addition, our interpretation is the same as the interpretation impliedly adopted by the Second Appellate District when it concluded the survey it was evaluating did not meet the fourth criterion. (*West Hollywood, supra,* 39 Cal.App.4th at pp. 502–503.)

Based on the foregoing, the only conclusion that can be reached under the record presented is that the Flats did not qualify as the third type of presumptive historical resource.

---

[9] Section 5024.1, subdivision (g) provides: "A resource identified as significant in an historical resource survey may be listed in the California Register if the survey meets all of the following criteria: [¶] (1) The survey has been or will be included in the State Historic Resources Inventory. [¶] (2) The survey and the survey documentation were prepared in accordance with office procedures and requirements. [¶] (3) The resource is evaluated and determined by the office to have a significance rating of Category 1 to 5 on DPR Form 523. [¶] (4) If the survey is five or more years old at the time of its nomination for inclusion in the California Register, the survey is updated to identify historical resources which have become eligible or ineligible due to changed circumstances or further documentation and those which have been demolished or altered in a manner that substantially diminishes the significance of the resource."

[10] Valley Advocates also refers to this survey as the Ratkovich Plan survey.

### 4. *Summary*

The City Council's May 2005 CEQA determination does not contain error with respect to the application of the presumptive historical resources category to the Flats. Therefore, unless the relevant circumstances have changed since that determination, City need not consider that alleged ground for noncompliance with CEQA on remand.

## IV. *Discretionary Historical Resources*

### A. *Text of CEQA*

The category of discretionary historical resources is derived from a combination of the second sentence and the last sentence of section 21084.1.

The text of the second sentence of section 21084.1 states: "For purposes of this section, an historical resource is a resource listed in, or determined to be eligible for listing in, the California Register of Historical Resources."[11]

The last sentence of section 21084.1 states: "The fact that a resource is not listed in, or determined to be eligible for listing in, the California Register of Historical Resources, not included in a local register of historical resources, or not deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1 shall not preclude a lead agency from determining whether the resource may be an historical resource for purposes of this section."

The last sentence of section 21084.1 is phrased in terms of what a lead agency is not precluded from doing. This phrasing, as well as the lack of a reference to the lead agency in the second sentence of section 21084.1, creates ambiguity as to (1) what, if anything, a lead agency is required to do (i.e., its affirmative obligations)[12] and (2) the extent of its discretionary authority. The provisions of CEQA do not address these ambiguities either in section 21084.1 or elsewhere.

### B. *Provisions in the Guidelines*

The Guidelines do address some aspects of these ambiguities, but do not resolve them fully.

---

[11] This sentence was discussed in part II.A, *ante*, in connection with the mandatory historical resources category.

[12] When an agency does not fulfill an affirmative obligation, it fails to lawfully exercise its discretion. In other words, "the agency has not proceeded in a manner required by law." (§ 21168.5.)

### 1. *Guidelines section 15064.5, subdivision (a)(4)*

Guidelines section 15064.5, subdivision (a)(4) tracks the language in the last sentence of section 21084.1 with only a few specific differences.[13] The differences between the statutory language and Guidelines section 15064.5, subdivision (a)(4) do not resolve the ambiguities in section 21084.1 regarding the discretionary historical resources category that are relevant to this appeal. Consequently, we need not discuss those differences further.

■ For purposes of this opinion, it is enough to note that these provisions are consistent with the conclusion that a lead agency has some discretionary authority when determining whether a building is an historical resource.

### 2. *Guidelines section 15064.5, subdivision (a)(3)*

Guidelines section 15064.5, subdivision (a)(3)[14] addresses aspects of a lead agency's discretionary authority in two ways. First, it limits what the lead agency is allowed to do. Second, it appears to impose an affirmative obligation on the lead agency.

■ The limitation is stated at the beginning of Guidelines section 15064.5, subdivision (a)(3): "Any object [or] building . . . which a lead agency determines to be historically significant . . . may be considered to be an historical resource, provided the lead agency's determination is supported by substantial evidence in light of the whole record." The Guidelines use the word "may" to identify discretionary authority. (Guidelines, § 15005, subd. (c); see § 15 ["may" defined].) Thus, Guidelines section 15064.5, subdivision (a)(3) confirms the lead agency's discretion to treat an object or building as an historical resource for purposes of CEQA and limits that discretion to situations where substantial evidence supports the lead agency's determination of historical significance.[15]

---

[13] Guidelines section 15064.5, subdivision (a)(4) provides: "The fact that a resource is not [a mandatory historical resource or a presumptive historical resource] *does* not preclude a lead agency from determining *that* the resource may be an historical resource *as defined in Public Resources Code sections 5020.1(j) or 5024.1*." (Italics added.) The italicized words indicate changes from the statutory text. "Does" replaced "shall," "that" replaced "whether" and "as defined in . . . section 5020.1(j) or 5024.1" replaced "for purposes of this section."

[14] City has not discussed how the provisions in Guidelines section 15064.5, subdivision (a)(3) affect a lead agency's consideration of the discretionary historical resources category. Instead, City adopted a four-category approach to historic resources and treated Guidelines section 15064.5, subdivision (a)(3) as pertaining to the first category. (See generally Remy et al., Guide to CEQA (11th ed. 2006) pp. 223–226 [four categories of historical resources].)

[15] In contrast to this explicit limitation, the Guidelines do not address the level of evidence, if any, that must support the opposite determination—namely, that the object or building is *not* historically significant.

 The second sentence of Guidelines section 15064.5, subdivision (a)(3) contains the following mandatory language: "Generally, a resource *shall* be considered by the lead agency to be 'historically significant' if the resource meets the criteria for listing on the California Register of Historical Resources . . . ."[16] (Italics added.) The word "shall" is used in the Guidelines to identify "a mandatory element which all public agencies are required to follow." (Guidelines, § 15005, subd. (a).)

### 3. *Discretionary authority*

The provisions in section 21084.1 and Guidelines section 15064.5 make clear that lead agencies have discretionary authority to determine that buildings that have been denied listing or simply have not been listed on a local register are nonetheless historical resources for purposes of CEQA.

The exact scope of that discretion is not clear. City contends that a lead agency may elect, in an exercise of discretion, to either consider the question of a building's historicity for purposes of CEQA or avoid the question entirely. In contrast, the statute and regulations also could be interpreted to mean a lead agency has a legal duty to (1) consider the question of a building's historicity for purposes of CEQA and (2) apply the criteria in Guidelines section 15064.5, subdivision (a)(3)(A) through (D) when making its determination (see 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *supra*, § 20.109, p. 1063). Under this interpretation, so long as these two duties are fulfilled, the ultimate determination is committed to the lead agency's discretion.

 For reasons stated later in this opinion (see pt. IV.E., *post*), we do not address the scope of the discretion granted to lead agencies. We go only so far as to interpret Guidelines section 15064.5 to mean that, at a minimum, a lead agency has the discretion to address separately whether an object or building is an historical resource for purposes of CEQA's discretionary historical resources category. This discretion exists notwithstanding previous decisions not to list the object or building on the local register of historical resources.

### C. *Application of Interpretation to Facts of This Case*

The May 3, 2005, staff report that recommended the City Council affirm the issuance of the categorical exemption for the project addressed whether the administrative record contained substantial evidence that the Flats were an

---

[16] This mandatory language appears to be derived from the second sentence of section 21084.1.

historic resource: "The Subject Building is not a 'historic resource' under CEQA because it does not fall into any of the categories within the definition of 'historic resource' in CEQA. That is, the Subject Building is not on a State register, it has not been found to be eligible for a State register by the State Historic Preservation Commission, it is not on a local register, *and Council has not treated nor chosen to treat the building as historical.*" (Italics added.)

Darrell Unruh of City's Planning and Development Department advised the City Council at its May 3, 2005, meeting that "[o]nce the action is taken by the City Council under our historic preservation ordinance, that is the, the answer to the question of whether a property is historic or not. So, from my perspective CEQA does not provide direction that once that action is taken, that action would be second guessed because that authority is placed in the City Council to make that determination."

The staff report, Unruh's advice, and a statement made by an attorney from the City Attorney's Office misinformed the City Council about its discretion. The City Council was not told that it had a choice to make at the May 3, 2005, hearing. It was told that it already had determined the Flats were not historical resources and that the previous determination answered whether the Flats were historic resources or not.

Instead, the City Council should have been informed of the following. First, its prior determination to deny the listing application meant that the Flats did not qualify for CEQA's presumptive historical resource category.[17] Second, a listing determination and a CEQA determination are not the same thing. Third, at a minimum, the City Council had a discretionary election to make at the May 3, 2005, hearing. Specifically, it could elect to separately consider whether the Flats were an historical resource for purposes of CEQA's discretionary historical resources category.

Because the City Council was misinformed about its discretion to make such an election, it follows that the City Council did not, in fact, exercise its discretion and make such an election. Further, the transcript of the May 3, 2005, City Council meeting shows that City did not in fact perform a separate analysis under the discretionary historical resource category to determine whether the Flats qualified as historical resources. Instead, City ended its inquiry once it determined that the Flats did not qualify as either mandatory historical resources or presumptive historical resources.

---

[17] The prior determination not to list cannot be interpreted as both a listing determination and a CEQA determination. Statements made by the city attorney and members of the City Council at the February 15, 2005, meeting establish that, at that meeting, the City Council only considered the listing determination and excluded resolving any CEQA issues. (See fn. 2, *ante.*)

Next, we must decide whether this informational error resulted in a prejudicial abuse of discretion.

## D. *Prejudice*

### 1. *Contentions of the parties*

Perez contends, among other things, that Valley Advocates has "shown no prejudice to their interests or the interests of the public by the manner in which this project was approved."

City appears to argue that the criteria for listing in the local register includes the same criteria for listing on the state register and, therefore, remanding this matter for consideration of the same criteria in a slightly different context will not change the decision to allow the proposed project to go forward without a negative declaration or EIR.

Valley Advocates addresses the issue of prejudice with various arguments. First, Valley Advocates contends "that the 'harmless error' standard is not applied to the environmental review of projects on appeal under CEQA." Second, Valley Advocates contends that the results of the environmental evaluation would have been different had City (1) fulfilled its obligation to consider whether the Flats qualified as historic resources under the discretionary historical resources category and (2) applied the fair argument standard to the evidence. Third, Valley Advocates contends that substantial evidence does not support the City Council's determination that the Flats should not be listed in the local register.

### 2. *Informational errors*

In some contexts presented under CEQA, a prejudicial abuse of discretion occurs when the absence of relevant information precludes informed decisionmaking by the public agency. (E.g., *San Joaquin Raptor Rescue Center v. County of Merced* (2007) 149 Cal.App.4th 645, 653 [57 Cal.Rptr.3d 663].)

■ This case involves something more than the simple absence of relevant information. Here, the relevant information was absent and incorrect information was provided in its place. Specifically, the City Council was misinformed about the legal effect of its prior denial of the listing application. As a result, the City Council did not have the correct information regarding its authority under CEQA to make a new discretionary determination concerning whether the Flats were historic resources.

In other contexts involving the exercise of discretion, this court has applied the general principle that a lawful exercise of discretion is predicated upon

the decision maker's knowledge and consideration of the applicable legal principles. (*Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 430 [134 Cal.Rptr.2d 744].) This general principle and CEQA's policy of promoting informed decisionmaking lead to the conclusion that a prejudicial abuse of discretion occurs when a public agency is misinformed regarding its discretionary authority and, as a result, does not actually choose whether to exercise that discretionary authority.

Accordingly, we conclude that the City Council prejudicially abused its discretion by failing to proceed in a manner required by law.

### E. *Scope of Discretion*

As observed in part IV.B.3., *ante,* the exact scope of the discretionary authority granted to lead agencies under section 21084.1 and Guidelines section 15064.5 is not clear.

We will not attempt to define the parameters of that which must be done for the lawful exercise of this discretionary authority. In particular, we will not decide if this discretion is best characterized as (1) a discretionary election to consider whether a building is an historic resource or (2) a mandatory duty to address and answer that question by determining, in the exercise of discretion, whether the building meets one of the definitions of historic resource acknowledged in the Guidelines.

The reason we do not address this legal issue is because we will not presume that the City Council will proceed in a manner that raises the issue. Nor will we presume that the project proponent will urge that such a course be taken. Rather, the more likely result is that on remand the City Council will hold another hearing at which it (1) acknowledges its discretion to consider whether the Flats are an historic resource for purposes of CEQA, (2) expressly elects to exercise that discretion by considering the issue, (3) evaluates the issue by, among other things, applying the criteria set forth in subdivision (a)(3) of Guidelines section 15064.5, and (4) reaches a discretionary determination that the Flats are, or are not, an historic resource.

Furthermore, the issue of the scope of the discretion has not been briefed in the detail given to other issues raised in this appeal. For instance, the fundamental question whether the Guidelines comport with section 21084.1 was not addressed. Also, the existence and resolution of ambiguities in the following regulatory language were not analyzed: "Generally, a resource shall be considered by the lead agency to be 'historically significant' if the resource meets the criteria for listing on the California Register of Historical Resources . . . ." (Guidelines, § 15064.5, subd. (a)(3).) For example, the

modification of the word "shall" with the word "generally" creates ambiguity. Does this combination create a more stringent standard, or more lenient standard, than that created by the word "should"? (See Guidelines, § 15005, subd. (b) [definition of "should"].) Does the word "generally" imply the existence of exceptions that apply only in particular circumstances and, if so, what are those circumstances?

## F. *Relief Granted*

City's noncompliance with CEQA will result in this case being remanded to the superior court with directions to issue a writ of mandate that directs City and the City Council to (1) set aside the approval of the site plan review Application S-04-399, (2) set aside the findings that the proposed project is categorically exempt, and (3) conduct a preliminary review that considers the application of the discretionary historical resources category to the Flats in accordance with the views expressed in this opinion. (See § 21168.9 [orders for noncompliance].)

## V. *Collateral Attack on Listing Determination*

Both City and Perez argue that Valley Advocates should be barred from attacking City Council's decision not to list the Flats in the local register. They cite a case in which the court stated a determination by a city not to designate certain buildings in its local register was immune from collateral attack. (*West Hollywood, supra*, 39 Cal.App.4th at pp. 505–506.) In that case, the designation decision was never challenged and, as a result, had become a final administrative decision by the time the CEQA proceedings were initiated. (39 Cal.App.4th at pp. 505–506.)

We conclude that a proper analysis of this argument regarding immunity from collateral attack must be addressed on a category-by-category basis. Furthermore, when considering the *West Hollywood* decision, one should be aware that it predates the 1998 adoption of Guidelines section 15064.5, which is the regulation that gives further definition to the three categories of historical resources.

Based on our earlier discussion of the mandatory historical resources category, we conclude that the City Council's February 15, 2005, decision to deny the nomination to list the Flats in the local register is irrelevant to the application of that category to the Flats. Therefore, the argument regarding immunity from collateral attack generates controversy only in its application to the presumptive historical resources category and the discretionary historical resources category.

### A. *Presumptive Historical Resources*

First, we will assume that, for purposes of applying the presumptive historical resources category in this case, Valley Advocates' petition and this appeal attack the City Council's determination not to list the Flats in the local register.

Second, we need not address whether the attack should be characterized as collateral or direct. Regardless of its characterization, we will address the merits of the attack as it relates to the presumptive historical resources category. In short, we will consider whether the City Council erred in failing to list the Flats in the local register.

Third, in addressing this potential error, we will use the substantial evidence test to review the City Council's administrative decision to not list the Flats in the local register. (See *Valenzuela v. State Personnel Bd.* (2007) 153 Cal.App.4th 1179, 1184 [63 Cal.Rptr.3d 529] [non-CEQA administrative decision reviewed by appellate court applying the substantial evidence test].)

City's historic preservation project manager and City's Historic Preservation Commission took the position that the Flats should be listed in the local register. The contrary position was presented by James Oakes, Perez's architect. Consequently, the question presented is whether the oral and written statements of Oakes regarding the historical significance of the Flats constitute substantial evidence.

Valley Advocates contends that Oakes's statements and opinions that the Flats are not historically significant are not substantial evidence in support of the City Council's denial of the nomination to list the Flats in the local register.

Section 21080, subdivision (e)(2) provides that "[s]ubstantial evidence is not argument, speculation, unsubstantiated opinion or narrative, [or] evidence that is clearly inaccurate or erroneous . . . ." (See Guidelines, § 15384, subd. (a) [definition of "substantial evidence"].) Valley Advocates contends that the testimony of Oakes "constitutes nothing more than unsubstantiated opinion or 'evidence' that is clearly inaccurate or erroneous."

At the February 15, 2005, City Council meeting, Oakes described his experience and credentials and presented his opinion that the Flats were not eligible for listing in the local register. His work as an architect on the proposed project established that he was familiar with the Flats. His credentials and experience demonstrated that he was familiar with the standards for preservation of historical resources in the Fresno area. Thus, we conclude that

the evidence is sufficient to establish that Oakes was an expert on the preservation of historic resources and was familiar with the buildings in question. Accordingly, his expert opinion on the application of the subjective criteria in the listing ordinance[18] constitutes substantial evidence supporting the decision not to list the Flats in the local register. (§ 21080, subd. (e)(1) [substantial evidence includes expert opinion supported by fact].)

In summary, to the extent Valley Advocates' petition and appeal are construed to present a challenge to City Council's February 2005 administrative decision not to list the Flats in the local register, the challenge must fail because the administrative decision is supported by substantial evidence. It follows that City Council did not err in May 2005 when it decided the Flats were not presumptive historical resources for purposes of CEQA.

### B. *Discretionary Historical Resources*

██ Prior determinations regarding the listing of a building on a local register are relevant to the presumptive historical resource category, but prior determinations not to list a building or include it in a survey do not control whether the object or building may be treated as an historical resource under CEQA's discretionary historical resource category. (See Guidelines, § 15064.5, subd. (a)(3), (4).)

Under Fresno Municipal Code former section 13-406, a "building, structure, object or site may be designated as an Historic Resource if it is found by the Commission and Council to meet [certain] criteria . . . ." The ordinance's

---

[18] Fresno Municipal Code former section 13-406(a) provides that a building may be designated as an historic resource if the local Historic Preservation Commission and City Council find it meets the following criteria:

"(1) It has been in existence more than fifty years and it possesses integrity of location, design, setting, materials, workmanship, feeling and association, and: [¶] (i) It is associated with events that have made a significant contribution to the broad patterns of our history; or [¶] (ii) It is associated with the lives of persons significant in our past; or [¶] (iii) It embodies the distinctive characteristics of a type, period or method of construction, or represents the work of a master, or possesses high artistic values; or [¶] (iv) It has yielded or may be likely to yield, information important in prehistory or history.

"(2) It has been in existence less than fifty years, it meets the criteria of subdivision (1) of subsection (a) of this section and is of exceptional importance within the appropriate historical context, local, state or national."

Similarly, subdivision (c) of section 5024.1 provides: "A resource may be listed as an historical resource in the California Register if it meets any of the following National Register of Historic Places criteria: [¶] (1) Is associated with events that have made a significant contribution to the broad patterns of California's history and cultural heritage. [¶] (2) Is associated with the lives of persons important in our past. [¶] (3) Embodies the distinctive characteristics of a type, period, region, or method of construction, or represents the work of an important creative individual, or possesses high artistic values. [¶] (4) Has yielded, or may be likely to yield, information important in prehistory or history."

use of the words "may be" indicates that, if the building meets the specified criteria, listing is discretionary, not automatic. Thus, a building can qualify for treatment as an historical resource based on the stated criteria and the City Council, in its discretion, may still choose not to list it in the local register.

Accordingly, the decision not to list a building on a local register does not necessarily resolve all factual questions and discretionary aspects of the City Council's inquiry into whether the building is an historical resource for purposes of CEQA's discretionary historical resource category. While overlap between the criteria used to determine historicity in each context exists, the discretionary listing decision is not the same as the decision to treat a building as a discretionary historical resource for purposes of CEQA.

■ Therefore, a claim that a lead agency erred in applying CEQA's discretionary historical resource category is not a collateral attack on a prior determination not to list an object or building on a local register. As a result, it is possible that an object or building excluded from the presumptive historical resources category by local administrative decisions will be considered an historical resource for purposes of CEQA's discretionary historical resources category.

We conclude that Valley Advocates' CEQA challenges concerning the application of the discretionary historical resources category to the Flats is not the equivalent of a challenge to the City Council's decision not to list the Flats in the local register. Therefore the prior decision not to list the Flats does not operate as a bar to Valley Advocates' claim City Council erred in its application of CEQA's discretionary historical resources category.[19]

## VI. *Fair Argument Standard*

The parties disagree about the standard a lead agency should apply when considering whether a building is an historical resource during the environmental review conducted prior to the preparation of an EIR. This pre-EIR review includes, among other things, the question whether an exception to a categorical exemption applies. Valley Advocates contends the fair argument standard applies. City and Perez disagree.

■ The fair argument standard establishes a low threshold that is met when there is substantial evidence in the record supporting a fair argument on

---

[19] We recognize that our analysis of the collateral attack issue differs from the court's analysis in *West Hollywood, supra,* 39 Cal.App.4th at pages 505 to 506. One reason for this difference is that Guidelines section 15064.5 had not been adopted at the time of that decision. Consequently, the court did not consider how the collateral attack argument related to the discretionary historical resources category, as it is defined by Guidelines section 15064.5, and its decision cannot be regarded as precedent on that specific point.

the matter in controversy. (*Architectural Heritage Assn. v. County of Monterey* (2004) 122 Cal.App.4th 1095, 1109–1110 [19 Cal.Rptr.3d 469] (*County of Monterey*).) Whether the record contains sufficient evidence to support a fair argument is a question of law. (*Ibid.*)

A. *Scope of* County of Monterey

Valley Advocates contends that, in accordance with *County of Monterey*, the fair argument standard should govern the determinations made in applying the three historical resources categories. City argues the court's approach to the fair argument standard in *County of Monterey* is not good law and the fair argument standard does not apply here because it is inconsistent with the language in section 21084.1 and legislative intent.

We conclude that (1) the circumstances in *County of Monterey* are distinguishable from the circumstances of this appeal, and (2) the fair argument standard is not applicable to the determination whether the Flats qualify as historical resources at this stage of the CEQA review process.

In *County of Monterey* the court stated: "In this case, the fair argument standard applies to all three substantive issues—historicity, impact and mitigation—since they all bear on the question of whether an EIR is required." (*County of Monterey, supra*, 122 Cal.App.4th at p. 1109, citing *League for Protection of Oakland, supra*, 52 Cal.App.4th at p. 905.)

We conclude that the court introduced its statement that the fair argument standard applied to historicity with the phrase "[i]n this case" because the facts and circumstances of that case were unusual and critical to its decision to apply the fair argument standard. In other words, the court's statement should not be read to mean that the fair argument standard always, or even generally, applies to the question whether a building or object is an historical resource during the environmental review conducted before the preparation of an EIR.

The court's statement in *County of Monterey* must be viewed in context. Part of that context is created by the arguments actually presented by the parties. Because both parties adopted the fair argument standard in presenting their positions to the court, the court was not asked to decide whether a different standard applied. For example, the county took the position that "the record does not contain substantial evidence supporting a fair argument that the Old Jail is historic . . . ." (*County of Monterey, supra*, 122 Cal.App.4th at p. 1108.) In contrast, the parties in this case clearly dispute whether the fair argument standard should apply.

 Moreover, *County of Monterey* is distinguishable because it involved the unusual circumstance of a lead agency attacking its own determination of

historicity by claiming the determination lacked sufficient evidentiary support. In that case, the initial study explicitly stated that " 'the old jailhouse is a significant historical resource as defined by CEQA [Guidelines] Section 15064.5.' " (*County of Monterey, supra*, 122 Cal.App.4th at p. 1113.) Accordingly, when *County of Monterey* is read in context, it stands for the following proposition: when a lead agency (1) determines in its initial study that a building is an historical resource and (2) subsequently wishes to claim the determination was not supported by sufficient evidence, the lead agency must establish there was no substantial evidence supporting its determination of historicity. Requiring a lead agency to show the record lacks substantial evidence is simply another way of saying the lead agency is required to show the fair argument standard was not met. (See *County of Monterey, supra*, at pp. 1109–1110 [the fair argument standard is met when there is substantial evidence in the record supporting a fair argument on the matter in controversy].)

Here, City is not seeking to overturn an earlier determination of historicity. Instead, City contends that its determination that the Flats did not meet the criteria for being an historic resource is supported by sufficient evidence and contends the sufficiency is gauged under the substantial evidence test. Thus, this appeal is readily distinguishable from *County of Monterey*, and the statement in *County of Monterey* regarding the application of the fair argument standard to the question of historicity does not necessarily apply to this case.

### B. *The Fair Argument Standard Does Not Apply Here*

Next, we address whether City was required to employ the fair argument standard when considering whether the Flats qualified as an historical resource. We conclude the fair argument standard did not apply.

#### 1. *Statutory ambiguity*

Sections 21084.1 and 21084, subdivision (e) do not state explicitly whether the fair argument standard is used to determine historicity. Similarly, Guidelines section 15064.5 does not provide an explicit answer.

Where the words of the statute and implementing regulation do not provide an unambiguous answer to the question presented, "then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd

consequences." [Citation.]' " (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) The apparent intent of the Legislature can be determined in part by the principle that the meaning given a particular section must be in harmony with the statute as a whole. (*Neumarkel v. Allard* (1985) 163 Cal.App.3d 457, 461 [209 Cal.Rptr. 616].) Under this principle, we must harmonize section 21084.1 with CEQA by considering that section in the context of the statutory framework.

### 2. *Policies guiding statutory interpretation*

■ Valley Advocates contends that the fair argument standard must be applied in this case to further a long-standing public policy identified by the California Supreme Court—specifically, CEQA is "to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (*Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049], disapproved on other grounds in *Kowis v. Howard* (1992) 3 Cal.4th 888, 896–897 [12 Cal.Rptr.2d 728, 838 P.2d 250]; see §§ 21000, 21001.) This statement of public policy, however, provides little guidance in the present situation. It begs the threshold question whether the Flats are part of the "environment" and ignores the policy's stated limitation—that it controls "within the reasonable scope of the statutory language." This limitation brings the analysis back to construing section 21084.1 in a reasonable manner. That statutory construction must promote the legislative purpose underlying section 21084.1 and fit within the framework of CEQA. We cannot simply leap from the general policy of protecting the environment to the conclusion that a fair argument of historicity is all that is needed to trigger the preparation of an EIR.

### 3. *Legislative history and statutory context*

Section 21084.1 was enacted in 1992 as part of Assembly Bill No. 2881 (1991–1992 Reg. Sess.). The original bill was amended before passage, and a staff analysis, which appears to be attached to or included in an analysis of Senate Floor Amendments by the Senate Committee on Natural Resources and Wildlife, states the following regarding section 21084.1:

"2. Resources on a local register of historical resources or included in the State Inventory of Historic Resources with a ranking of 5 or higher would NOT be statutorily significant for CEQA purposes but would be PRESUMED to be significant unless the weight of evidence demonstrated they were not. A lead agency would almost certainly have to consider such resources significant for CEQA purposes. However, the door would be left open for someone to argue against significance and if convinced by such argument, a lead

agency would have the discretion to consider the resource not to be significant. *If this occurred, neiither [sic] an EIR nor a mitigated negative declaration would be required.*

"In effect, this means that for CEQA purposes, local properties or those in the State Inventory are not considered quite as important as properties included in or eligible for inclusion in the California Register.

"3. Resources which have not been considered for the California Register, for a local register or for the State Historic Resources Inventory may, at the discretion of a lead agency, be evaluated to determine if they are significant for purposes of CEQA." (Sen. Com. on Natural Resources and Wildlife, Analysis of Amends. to Assem. Bill No. 2881 (1991–1992 Reg. Sess.) Aug. 8, 1992, p. 1, italics added.)[20]

The italicized sentence in this legislative history shows that the Legislature was considering how application of the definition of an "historical resource" would affect the need for an EIR or mitigated negative declaration. In particular, it demonstrates that the Legislature intended that an EIR would not be required when the presumption that a resource was historically significant was rebutted. Consequently, we consider whether the rebuttal of the presumption of historicity is compatible with the application of the fair argument standard to the question of historicity.

A fair argument is not extinguished by the existence of substantial or even a preponderance of the evidence on the opposite side of an issue.[21] This court has stated: "A logical deduction from the formulation of the fair argument test is that, if substantial evidence establishes a reasonable possibility of a significant environmental impact, then the existence of contrary evidence in the administrative record is not adequate to support a decision to dispense with an EIR." (*County Sanitation Dist. No. 2 v. County of Kern* (2005) 127 Cal.App.4th 1544, 1580 [27 Cal.Rptr.3d 28].) In the particular context of historical resources, it appears that the mere listing in the local register or inclusion in a qualified survey would be substantial evidence supporting a fair argument that the resource is historically significant. Rebutting this substantial evidence would not negate the existence of a fair

[20] We take judicial notice of this legislative history pursuant to City's unopposed motion of July 26, 2007. (See Evid. Code, § 452, subd. (c) [judicial notice]; *People v. Ledesma* (1997) 16 Cal.4th 90, 98 & fn. 4 [65 Cal.Rptr.2d 610, 939 P.2d 1310] [judicial notice of legislative staff analyses].)

[21] For example, Guidelines section 15064, subdivision (f)(1) provides in part: "[I]f a lead agency is presented with a fair argument that a project may have a significant effect on the environment, the lead agency shall prepare an EIR even though it may also be presented with other substantial evidence that the project will not have a significant effect [citation]." (See Guidelines, § 15384, subd. (a) [role of substantial evidence in creating a fair argument].)

argument. As a result, we conclude that the fair argument standard cannot apply at the same time as a rule that allows a presumption of historicity to be rebutted by a preponderance of the evidence. In other words, the fair argument standard is not compatible with the rebuttable presumption.

In addition, we note, use of the fair argument standard would be incompatible with the concept of a *discretionary* historical resources category because the fair argument standard presents a question of law. As a question of law, the presentation of substantial evidence supporting a fair argument would decide the matter, and there would be no need to exercise discretion by weighing evidence or competing interests or values.

■ Based on these incompatibilities and the legislative history of sections 21084 and 21084.1, we conclude the Legislature did not intend that the fair argument standard apply to the question of historicity during the preliminary review stage of an environmental review.

Therefore, the only reasonable interpretation of section 21084.1 is that the fair argument standard does not govern a lead agency's application of the definition of an historical resource. Of course, once the resource has been determined to be an historical resource, then the fair argument standard applies to the question whether the proposed project "may cause a substantial adverse change in the significance of an historical resource" (§ 21084.1) and thereby have a significant effect on the environment.

Our interpretation of section 21084.1 is consistent with the analysis adopted by the court in *League for Protection of Oakland, supra*, 52 Cal.App.4th at pages 908 to 909. First, the court "conclude[d] that the Montgomery Ward Building must be classified as a presumptively 'historical resource' within the meaning of section 21084.1." (*Id.* at p. 908.) This unqualified statement would not have been necessary if the court was applying the low threshold of the fair argument standard. Second, the court addressed the rebuttal of the presumption by stating: "We further conclude that the presumption of historic status has not been rebutted by any evidence in the record." (*Ibid.*) If it had been applying the fair argument standard to the question of historicity, it would not have needed to address whether the presumption had been rebutted.

### 4. *Exceptions to CEQA exemptions*

Valley Advocates specifically contends that the fair argument standard applies to the question whether the Flats are historic resources for purposes of applying exceptions to the categorical exemptions. We reject this contention.

First, the Legislature added sections 21084.1 and 21084, subdivision (e) to CEQA at the same time as part of Assembly Bill No. 2881 (1991–1992 Reg. Sess.). (See Stats. 1992, ch. 1075, §§ 7, 8, p. 4983.) Subdivision (e) of section 21084 provides for an exception to categorical exemptions: "No project that may cause a substantial adverse change in the significance of an historical resource, as specified in Section 21084.1, shall be exempted from [CEQA] pursuant to subdivision (a)." This provision demonstrates that the Legislature intended that the definition of "historical resources" contained in section 21084.1 apply at the stage of environmental review where exemptions are considered by the lead agency. Therefore, our previous analysis of the legislative intent as to the review that occurs before the preparation of an EIR applies with equal force to the standard of review for exceptions to the categorical exemptions.

Second, Valley Advocates' reliance on *Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego* (2006) 139 Cal.App.4th 249 [42 Cal.Rptr.3d 537] (*Banker's Hill*) is misplaced. In *Banker's Hill*, the court concluded "that an agency must apply a fair argument approach in determining whether, under Guidelines section 15300.2(c), there is no reasonable possibility of a significant effect on the environment due to unusual circumstances." (*Id.* at p. 264.) Guidelines section 15300.2, subdivision (c) states a blanket exception to CEQA's categorical exemptions. (*Banker's Hill*, at p. 260.)

In *Banker's Hill*, the court did not address whether any objects or buildings should be considered to be within the scope of protected environment because they were historical resources. That case is not authority for the proposition that, when considering the exception contained in Guidelines section 15300.2, subdivision (c), the fair argument standard is applied to determine whether the environment includes an object because of its historical significance.

Third, we have not located or been directed by the parties to any authority adopting or rejecting the view that a project opponent need only present a fair argument that a building is an historical resource when applying Guidelines section 15300.2, subdivision (c).

Accordingly, our earlier conclusion that the fair argument standard does not apply to the question whether a building qualifies as an historical

resource also applies in the specific context of exceptions to the CEQA exemptions.

With respect to other aspects of determining whether an exception to an exemption applies, we confirm our statement in an earlier published decision that the project opponent, not the lead agency, has "the burden of producing substantial evidence showing a reasonable possibility of adverse environmental impact sufficient to remove the [project] from the categorically exempt class. (See *Davidon Homes v. City of San Jose* [(1997)] 54 Cal.App.4th [106,] 115 [62 Cal.Rptr.2d 612]; see also Guidelines, § 15300.2, subd. (c).)" (*Magan v. County of Kings* (2002) 105 Cal.App.4th 468, 476 [129 Cal.Rptr.2d 344].) In other words, the fair argument standard applies to the other determinations that are necessary to apply Guidelines section 15300.2, subdivision (c). This also is the view taken by the court in *Banker's Hill* when it addressed whether there was a reasonable possibility of a significant effect on the environment due to any of the purported unusual circumstances. (*Banker's Hill, supra*, 139 Cal.App.4th at p. 278.)

### 5. *Summary*

Accordingly, City was not required to apply the fair argument standard when determining whether one or both of the Flats is an historical resource for purposes of CEQA's three historical resources categories, even when that inquiry was made in the context of exceptions to the categorical exemptions. Therefore, City did not violate CEQA on this ground.

VII., VIII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed. The matter is remanded to the superior court with directions to vacate its order denying the petition for writ of mandate and to enter a new order that grants the petition for writ of mandate and directs City to (1) set aside its approval of the site plan review Application S-04-399, (2) set aside its findings that the proposed project is categorically exempt, and (3) conduct a preliminary review that properly considers the discretionary historical resources category.

---

*See footnote, *ante*, page 1039.

The superior court shall retain jurisdiction over the proceedings by way of a return to the writ.[26] Appellants shall recover their costs on appeal.

Gomes, Acting P. J., and Kane, J., concurred.

A petition for a rehearing was denied March 17, 2008, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 21, 2008, S162148.

---

[26] This statutory requirement is set forth in section 21168.9, subdivision (b). (E.g., *County Sanitation Dist. No. 2 v. County of Kern, supra*, 127 Cal.App.4th at p. 1637 [superior court directed to require public agency to respond to writ by filing a return].)